JOHN HATHAWAY and wife v. MARGATET HARRIS and others.

*Construction of Will—Enlargement of Life Estate.*

A testator devises land to his son, Henry, during his life, and if he should die leaving a lawful child, then to him and his heirs; but if he should die without a lawful child, then to his widow, &c. The devisee after his father's death had issue, a daughter, conveyed the devised land, and died: *Held*, that upon the happening of the contingency, the life estate of the devisee was enlarged into a fee, the title to which passed by the deed to his grantee.

CIVIL ACTION to recover land tried at Spring Term, 1880, of PITT Superior Court, before *Avery, J.*

Richard Harris, who formerly owned the land, the title to which is in controversy in this action, died on the 6th day of April, 1836, leaving a will wherein he devises the same in these words: "It is my will that my son Henry have land, (describing its boundaries) and that he have the use of it during his life; and if he should die with a lawful child, then to him and his heirs forever. But if he should die without a lawful child, then to his widow, if living, during her life or widowhood, and after her death or widowhood, to Richard Albert, his heirs and assigns forever."

Henry Harris, the devisee, after his father's death had issue, a daughter, who is the feme plaintiff, and after her birth he conveyed the land to one Spencer Harris, the husband of one, and the ancestor of the other, defendants, his heirs at law. Henry Harris and Spencer Harris both died before the institution of the suit.

These facts are found in the special verdict, and the question submitted to the court is as to the meaning and legal effect of the recited clause of the will, and whether, thereunder, an estate in fee or for life only, vests in the devisee Henry; if for life, the plaintiffs are entitled to judgment; if in fee, they fail in the action. The court adjudged that

Henry Harris took only a life estate, and could convey no greater estate to Spencer Harris under whom the defendants claim; and that upon the death of Henry, the land descended to the plaintiff, Margaret Hathaway, who was entitled to recover. From this judgment defendants appealed.

*Mr. Jas. E. Moore*, for plaintiffs.
*Messrs. Latham* and *Skinner*, for defendants.

SMITH, C. J. We differ with His Honor in the construction he places upon the limitation over, contingent upon the death of Henry with a lawful child, "*then to him and his heirs*," whereby these words are applied to the *child*, and in this case, designates the daughter, who takes the fee. In our opinion, they refer to the devisee, Henry, and enlarge his preceding life estate into a fee, and for the following reasons:

1. In every other part of the entire clause, (except the concluding words) where the pronouns *he* and *his* are used, the reference is plainly to the son, Henry, and must be so understood, to give meaning to the sentence, " If he (Henry) should die with a lawful child, then to him (Henry) and his (Henry's) heirs forever; but if he (Henry) should die without a lawful child, then to his (Henry's) widow," &c., plainly indicating the presence of the son, in the testator's mind, in making these contingent dispositions of the estate. It would be unreasonable to separate this brief paragraph from its context, and assign it a reference altogether unlike its associates.

2. In both sections of the clause, the testator speaks of a *lawful child*, avoiding any allusion to its sex, and thus comprehending both a son and a daughter, and yet in the limitation over "to him and his heirs," the masculine pronoun is used, which, in strictness, would exclude the daughter, if applied to the more general preceding word, *child*.

7

3. From the other clauses of the will, it will be seen that he devises lands to his other sons unconditionally, and without the limitations which fetter the gift to Henry. It may be inferred, though the fact is not stated in the verdict, that the other sons had issue when the will was made, while Henry had none, and therefore the testator intended to place him upon the same footing with his brothers, if he had issue living at his death, and to provide for the uncertainty of his dying without.

The will having been executed since the act of 1827, it must be read by force of the enactment, as if the testator had added to the words immediately preceding the limitation, the words "living at the time of his death, or born to him within ten months thereafter." Bat Rev., ch. 42, § 3.

The declarations of the testator were entirely incompetent to vary the construction to be given to his will, and were properly ruled out. Wig. on Wills, Prop. 6. But they become immaterial, as our interpretation of the testator's intent, derived from the language he employs, is, that which the proposed declarations were intended to disclose.

There must, therefore, be judgment for the defendant.

Error. Reversed.