These decisions discussed and analyzed by Clark, C.J.; Allen, J., dissenting.
This is an action to recover land. The lands in question were owner by Hugh L. Patterson, who died September, 1870, leaving a will, which reads as follows: *Page 474 
In the name of God, Amen. I make this my last will and testament, viz:
Item 1. I will and bequeath to my beloved mother the plantation she now resides on during her lifetime, with all the growing crop and everything connected with the place, except as hereinafter mentioned.
Item 2. I will and bequeath to my nephew John D. Jowers one sorrel horse, Charlie.
Item 2. I will and bequeath to my nephew Clem Jowers one day colt.
Item 3. After the death of my mother I will and bequeath the plantation above mentioned to my nephews, John D. and Clem Jowers, to be divided equally between them. In case they or either of them die without issue, it is my will that the property herein bequeathed shall go to the heirs of Archibald and Gilbert Patterson and to the surviving brother John D. or Clem Jowers, as the case may be, to be equally divided between them.
Item 4. To the heirs of my brother, Archibald Patterson, I give the original capital invested in the firm of R. Lilly Co. at Floral College and afterwards transferred to Shoe Heel Depot, under the title (450) of Lilly Patterson, and all the profits accruing therefrom.
Item 5. To the heirs of Gilbert and Margaret Patterson I bequeath the McKay Plantation together with all my landed interests at Shoe Heel Depot, money and everything else not hereinbefore mentioned. Also ten bales of cotton out of the present growing crop on the plantation bequeathed in item first of this will, and all other property not hereinbefore mentioned.
Item 6. I hereby appoint Gilbert Patterson as executor of this my last will and testament.
Item 7. It is my will that the lands which I purchased at the bankrupt sale of William Patterson, if not redeemed this ensuing fall, shall go to the heirs of my brother, Archibald Patterson; if redeemed, that the money, five hundred dollars in amount, shall go to the same. 30 August, 1870.
Nancy Patterson, the mother of the testator, who is referred to in the first item of the will, died 10 September, 1877.
John D. Jowers, referred to in items 2 and 3 of the will, a nephew of the testator, died 8 January, 1904, without leaving any issue surviving him. Clem Jowers is still living and has several children.
At the death of the testator, John D. and Clem Jowers were both minors, unmarried, and resided with testator and were supported by *Page 475 
him. Archibald Patterson, mentioned in item 3, was a brother of the testator and died prior to the death of the testator.
Gilbert Patterson, mentioned in the third item, was a brother-in-law of the testator. Gilbert Patterson's wife, Margaret, was a sister of the testator, and she died prior to the date of the will. The defendant, Sallie E. McCormick, purchased the land for value in 1883, and the other defendants claim under her.
It is contended by the plaintiffs, as shown by the complaint, that although John Jowers died after the death of the life tenant, Nancy Patterson, the testator's mother, yet because he died without issue, the entire property is to be divided at this time between the heirs of Archibald and Gilbert Patterson and Clem Jowers; if upon the death of Clem Jowers none of his children survive him, the entire property must necessarily be divided again among the heirs of Archibald and Gilbert Patterson.
The defendants, on the other hand, contend that upon the death of the life-tenant, Nancy Patterson, the mother of the testator, the entire estate devised in the third item of the will was to be divided between John and Clem Jowers and then vested absolutely and unconditionally in them, both of them having survived the life-tenant; and inasmuch as the defendants have acquired by purchase the title of both John D. and Clem Jowers to the lands mentioned in the first (451) item and the third item of the will, they are the owners of said lands in fee simple.
The defendants also contend that although their construction of the will may be wrong, that this construction prevailed at the time of their purchase, and that they are protected under the doctrine of stare decisis. The court instructed the jury if they believed the evidence to answer the issues in favor of the defendants. The plaintiffs excepted.
There was verdict and judgment for the defendants, and the plaintiffs appealed.
This controversy turns almost entirely upon the construction given to these words in item 3 of the will, "In case they or either of them die without issue," and this depends upon the act of 1827, now Rev. 1581, which reads as follows: "Every contingent limitation in any deed or will, made to depend upon the dying of any person without heir or heirs of the body, or without issue or issues of the *Page 476 
body, or without children or offspring, or descendant, or other relative, shall be held and interpreted a limitation to take effect when such person shall die, not having such heir, or issue, or child, or offspring, or descendant or other relative (as the case may be) living at the time of his death, or born to him within ten lunar months thereafter, unless the intention of such limitation be otherwise, and expressly and plainly declared in the face of the deed or will creating it: Provided, that the rule of construction contained in this section shall not extend to any deed or will made and executed before the fifteenth of January, one thousand eight hundred and twenty-eight."
If the time of dying without issue is to be referred to the death of John D. and Clem Jowers during the existence of the life-estate of their mother, Nancy Patterson, the title of the defendants is good because John D. and Clem survived the life-tenant and neither died, during her life, leaving no issue, but if the time is the death of John D. and Clem, the title of the defendants is defective unless protected by the doctrine ofstare decisis as John died leaving no issue.
At common law a limitation contingent upon death was held to be an indefinite failure of issue and was void for remoteness.
In the application of this principle and in order to avoid as far as possible defeating the intent of the grantor or testator, or if there was in any deed or will an intermediate period, such as the termination (452) of the life-estate, a period fixed for division, arrival at full age or the like, the courts held that "dying without issue was referable to this intermediate period." This was the rule laid down in Hilliardv. Kearney, 45 N.C. 221, at June Term, 1853, which was based on no precedent in this State, but cited and relied solely upon English decisions. The statute of 1827 forbade its application to deeds or wills executed prior to 15 January, 1828, and the will construed in Hilliardv. Kearney had been executed in 1775.
The statute of 1827 changed the principle making the limitation dying without issue void for remoteness and abrogated the rule of construction which applied it to an intermediate period. This statute applied to all limitations contingent upon dying without issue, and is not restricted to those where there is no intermediate estate. The language is "Every contingent limitation," and there is no exception from its operation.
The statute also establishes a new rule of construction and fixed as the time for dying without issue "when such person shall die," and in this case John and Clem or one of them.
This rule laid down by the statute is obligatory on the courts and must be observed in all cases except, as provided by the statute, when a contrary intent is "expressly and plainly declared in the face of the *Page 477 deed or will," And we find no such contrary intent in the will before us.
The contention of the defendant is that while the above propositions are true and the provision of the statute is clear and unambiguous and is obligatory on the court, yet that at the time the title to the land in controversy was acquired by those under whom the defendants claim there had been a line of decisions placing a different construction upon such words in a deed and will.
Even if it were true that there had been decisions construing such limitation contrary to the plain intent of the statute, the statute must govern and not the erroneous construction of the courts. In order to make a line of decisions a rule of property they must be uniform and consistent, and not in conflict within the plain expression of the statute, for the statute law, unless in conflict with some provision of the Constitution, is supreme.
On examination we find that while there are some decisions of the tenor of Hilliard v. Kearney, upon examination they have not been uniform, and, on the contrary, have been almost invariably in cases where the will or deed construed came within the exception in the statute of 1827 that "this section shall not extend to any deed or will made and executed before 15 January, 1828," and a few cases in which it does not appear at what date the instrument was recorded and others in which the court does not refer to the statute. There has (453) not been by any means a uniform line of decisions or "consistency in error" which would have justified any reasonably prudent man in relying upon decisions in conflict with the express provisions of the statute, if that could be done in any case whatever.
On the contrary, in the following cases the court had under consideration the construction of a limitation in a will executed since 15 January, 1828, and which therefore came under the act of 1827. In each of these cases the court expressly referred to the act of 1827 and construed the limitation in accordance with the plain words of that act and not according to the rule stated in Hilliard v. Kearney. In one or two of these cases the limitation was precisely like that in the present case, i.e.,Clapp v. Fogleman, 21 N.C. 467, opinion by Daniel, J.; Tillman v.Sinclair, 23 N.C. 183, opinion by Ruffin, C. J.; Moore v. Barrow,24 N.C. 436, opinion by Ruffin, C.J. (in which case the limitation was exactly like that in the present case); Garland v. Watt, 26 N.C. 287, opinion by Daniel, J.; Jones v. Oliver, 38 N.C. 370, opinion by Daniel, J.;Weeks v. Weeks, 40 N.C. 111, at p. 115, opinion by Battle, J.; Spruill v.Moore, 40 N.C. 284, opinion by Battle, J.; Holton v. McAlister,51 N.C. 12, opinion by Ruffin, C.J.
In the following cases the wills were executed before 15 January, 1828, but the Court, in delivering the opinions, advert to the act of *Page 478 
1827, and state that the law since the will was executed had been materially changed and that the construction of the limitation would be different under the act: Rice v. Satterwhite, 21 N.C. 69, opinion byGaston, J.; Brown v. Brown, 25 N.C. 134, opinion by Ruffin, C.J.; Gibsonv. Gibson, 49 N.C. 425, opinion by Battle, J. This last case was decided in 1857.
In every case relied upon by the defendants to support their contention the will was either made prior to the act of 1827 or the decisions were based entirely upon English decisions or decisions of this Court construing wills made before the passage of that act, or the act was not noticed and the Court appears to have been oblivious of it, temporarily of course.
Hilliard v. Kearney, 45 N.C. 221, was decided in 1853, but, as above mentioned, it construed a will which had been made in 1775, which of course was expected from the act of 1827 by the proviso thereto, and the Court in that case cited and relied upon English cases exclusively in support of the construction given to the will in that case.
As to the other cases cited by the defendant — Webb v. Weeks,48 N.C. 282, constructed a will made in 1802; Biddle v. Hoyt, 54 N.C. 160, constructed a will made in 1804, and Fairley v. Priest, 56 N.C. 21, does not even refer to or discuss the question now under consideration. (454)
Vass v. Freeman, 56 N.C. 221, construed a will the date of which does not appear in the report of the case. The opinion therein cites and relies upon Hilliard v. Kearney, Biddle v. Hoyt, and English decisions in support of the "intermediate period" rule therein laid down, which was moreover but a dictum for the reason that in that will there was neither a preceding life-estate or any provision for a division of the property at any specified time.
Jenkins v. Hall, 57 N.C. 334, constructed a will the date of which is not given and relies upon Hilliard v. Kearney in support of the "intermediate period" rule above referred to, though the language in that will was sufficiently definite and specific to meet the requirements of the act of 1827, if made after the statute, for fixing an intermediate period "for the vesting of the estate." Camp v. Smith, 68 N.C. 537, was not only decided after the probate of the will now before us, but is a dictum. The point was not decided at all.
Davis v. Parker, 69 N.C. 271, constructed a will where there was neither a preceding life estate nor any provision for the division of the property, and what was said in support of the intermediate period rule was therefore a dictum only, and was stated upon the authority of Hilliard v.Kearney.
Burton v. Conigland, 82 N.C. 100, the first case strongly relied upon by the defendant in support of their contention in this respect, *Page 479 
construed a will the date of which is not given in the report of the case, a clause of which provided: "I give and bequeath to my nephew, John H. Ponton, my tract of land in Quankey known as `Longs.'. . . My friend Mungo T. Ponton, is to have the use and benefit of said tract of land until he, the said John H. Ponton, arrives at the years of twenty-one. If he dies leaving no child, I give it to his brother William Ponton, Mariah and Mary Ponton. Should they die leaving no child, I give to Brother Henry Doggett." The Court, in holding that the effect of this clause of the will was (1) to vest the estate at once in the nephew, and (2) that the contingent limitation over in the event of the death of the nephew leaving no child must be restricted to a death occurring during the testator's lifetime or the nephew's minority, made no reference whatever to the act of 1827, and relied entirely for the decision upon Hilliard v. Kearney and other cases therein cited, in all which that case was cited as the basic authority for the "intermediate period" rule, and in all of which, save one, the wills construed were made prior to the act of 1827 or the dates thereof do not appear in the reported cases.
The counsel for the losing side in Burton v. Conigland did not in his brief rely on nor even refer to the act of 1827. In Murchison v. Whitted,87 N.C. 465, the date of the will is not stated, and the court decided solely upon the authority of Hilliard v. Kearney as if (455) the will was made before 1827 or the statute was not then in the mind of the Court. The same judge (Ashe, J.), in the other cases written by him, recognized the change made by the statute and construed similar limitations differently.
The act of 1827 has been construed by this Court at least twenty-six times, beginning with Tillman v. Sinclair, 23 N.C. 183 (decided in 1840), and ending with Kirkman v. Smith, 175 N.C. 579, and in every case in which it has come before the Court for construction it has uniformly been held that "Dying without heirs or issue," upon which a limitation over takes effect, is referable to the death of the first taker of the fee without issue living at the time of his death, and not to the death of any other person or to any intermediate period. Rice v. Satterwhite,25 N.C. 69, and note; Clapp v. Fogleman, 21 N.C. 467; Tillman v. Sinclair,23 N.C. 183; Moore v. Barrow, 24 N.C. 436; Brown v. Brown, 25 N.C. 134;Garland v. Watt, 26 N.C. 288; Brantley v. Whitaker, 27 N.C. 225;Jones v. Oliver, 38 N.C. 370; Weeks v. Weeks, 40 N.C. 111;Sanderlin v. Deford, 47 N.C. 77; Gibson v. Gibson, 49 N.C. 426;Holton v. McAlister, 51 N.C. 12; Miller v. Churchill, 78 N.C. 373;Hathaway v. Harris, 84 N.C. 96; King v. Utley, 85 N.C. 60;Smith v. Brisson, 90 N.C. 285; Buchanan v. Buchanan, 99 N.C. 308;Kornegay v. Morris, 122 N.C. 202 (reheard 124 N.C. 424); Sain v. Baker, *Page 480 128 N.C. 256; Sessoms v. Sessoms, 144 N.C. 121; Staton v. Godard,148 N.C. 434; Perrett v. Bird, 152 N.C. 220; Rees v. Williams,165 N.C. 201; Burden v. Lipsitz, 166 N.C. 523; O'Neal v. Borders,170 N.C. 483; Kirkman v. Smith, 175 N.C. 579.
The earlier cases in which there were intervening life estates, notwithstanding which it was held that the limitation over did not take effect until the first taker of the fee died without leaving issue surviving him, are Ferrand v. Jones, 37 N.C. 633 (decided in 1843); Spruillv. Moore, 40 N.C. 284 (1845); Sadler v. Wilson, 40 N.C. 296 (1845);Douthett v. Bodenhamer, 57 N.C. 444 (1859). It is sufficient to quote from only one of them in which David Latham gave certain slaves tohis wife for life, and after her death to his daughters, and provided "If either of my said daughters should die without lawful issue, then and in that case the survivor or survivors of my said daughters shall have all the said negroes and their increase forever." The life tenant was dead and two of the daughters had died without issue. Ruffin, C.J., writing the opinion, said, "There is no doubt that each of the daughters took a vested interest in the slaves subject to be divested upon her death without leaving issue, and to go over as long as there was on or more of them who could take by survivorship. Whatever doubt (456) may have before existed, there is now none, as the act of 1827, ch. 7, enacts that such a limitation is to be interpreted as one to take effect upon the death of the party without leaving issue living at the death, unless the contrary be plainly declared in the will."
It is to be noted that in this case Judge Pearson, who wrote the opinion in Hilliard v. Kearney, concurred in the decision, the only difference between the two cases being that the will in the later case was made before the statute of 1827.
The more recent cases where there were intervening life estates, in which this Court has held that the statute applies, are as follows: Cowandv. Myers, 99 N.C. 199; Dunning v. Burden, 114 N.C. 34; Kornegay v.Morris, 122 N.C. 199; Harrell v. Hagan, 147 N.C. 111; Dawson v. Ennett,151 N.C. 544; Perrett v. Bird, 152 N.C. 220; Elkins v. Seigler,154 N.C. 374; Hobgood v. Hobgood, 169 N.C. 486; Vincent v. Wise,159 N.C. 653; Whichard v. Craft, 175 N.C. 128; Kirkman v. Smith,175 N.C. 579. The case of Vincent v. Wise construed the will of the lateChief Justice Smith, in which there were two intervening life estates, notwithstanding which this Court held that:
"Under numerous decisions of the Court in a devise of this character, and unless a contrary intent appears from the will, the event by which the estate must be determined will be referred not to the death of the devisor, but the holder of the particular estate itself, and the determinable quality of such an estate, or interest, will continue to affect it *Page 481 
till `the event occurs by which same is to be determined, or the estate becomes absolute.'"
The language of the statute is so plain and its purpose has been so clearly stated therein and in the decisions that the sole contention of the defendants is based upon the doctrine of stare decisis, and which is that the law was otherwise settled by the decisions of this Court at the time the plaintiff's title accrued, and therefore that the purchaser has a vested interest in the erroneous decisions of the court, even to the extent of depriving the plaintiff of the vested interest which they have by virtue of the statute of the State.
"The court of appeals was obviously not bound to follow its own prior decision. The rule of stare decisis, though one tending to consistency and uniformity of decision, is not an inflexible one." Hertz v. Woodman,218 U.S. 205.
"Where the statute's meaning is plain and obvious, the Court should uphold it in its integrity, even if necessary to overrule or disregard prior decisions upon it. 15 C. J., p. 945, sec. 340, note 19a; Remey v. R.R., 116 Iowa, 133.
"If it appears from the report of the case that it (the point) was not taken or inquired into at all, there is no ground for presuming that it was duly considered, and the authority of the case is (457) proportionately weakened." 15 Corpus Juris, p. 942 (sec. 333);Maloney v. Dows, 54 Barlow (N. Y.) 32; In re Lyman, 161 N.C. 119, and 160 N.Y. 96. "The rule does not preclude overruling decisions uponsubjects plainly erroneous." 15 Corpus Juris, 944, 945; 15 C. J., p. 945 (sec. 340) 1; Mason v. McCormick, 80 N.C. 244. The rule of staredecisis cannot be applied to perpetuate error. Sec. 357, 15 C. J., p. 956.
There are several insuperable objections to the contention of the defendant.
1. The doctrine of stare decisis cannot be construed as giving a vested right when there are conflicting decisions. It can only be sustained when the decisions are uniform and consistent. "When there are conflicting decisions there can be no application of the doctrine of stare decisis." 15 C. J., p. 955, sec. 355, notes 8 and 9.
2. "Where the statute is explicit and has been overlooked, the doctrine of stare decisis does not apply." 15 C. J. 958, note (h), col. 3, near bottom, citing Remey v. R. R., 116 Iowa 133; Law v. Smith, 34 Utah 394;Tel. Co. v. R. R., 95 Va. 661. When the statute and the precedents conflict the statute controls. The courts cannot by a line of erroneous decisions overrule the statute.
3. To this last rule there has been only one exception claimed which is that when there have been uniform decisions giving a statute a *Page 482 
certain construction and a contract has been made which would be valid under such construction, the later decision does not retroact so as to invalidate such contract. Hoke, J., in Mason v. Cotton Co., 148 N.C. 509; citing Falconer v. Simmons, 51 W. Va. 172, 26 A. E. 184. But a conclusive reply to this is that this exception to the principle has no application in this case for the reason that this Court has never in any case construedthe act of 1827 to mean other than that the death of the first taker of thefee, without heirs or issue, meant dying without living issue at the timeof his death.
This is conclusive of this controversy. There has been no uniform line of decisions under which the defendants could claim, as creating staredecisis contrary to the statute if this could be done. The decisions which the defendants cite are those construing wills or deeds executed prior to the enactment of the statute or in cases where the statute was ignored. There have been no decisions construing the statute contrary to the line of decisions which is now the settled law and under which the plaintiffs are entitled to recover.
We are of opinion that upon the death of John D. Jowers the title of the plantation in question vested absolutely in the plaintiffs as the children of Archibald and Gilbert Patterson and the defendants, the purchasers from Clem Jowers, and it appearing from the record (458) that the defendants, in their answer, admitted an eviction by absolutely denying plaintiffs' title or interest in said plantation, his Honor erred in charging the jury as set out in the record.
Error.