The following judgment was rendered by the court below:
"This cause coming on to be heard, and it appearing to the court that summons was issued herein on 9 June, 1930, and that service of the summons and a copy of the complaint was accepted by all of the defendants except the defendants Anne Cannon Reynolds, Louise Reynolds, William N. Reynolds (minor), Nancy Reynolds Bagley (minor), J. Edward Johnston, Jr. (minor), and Zachary Smith Reynolds (minor), but that said defendants have been served with summons by publication or personally as required by law, and that all of the infant defendants are represented by general guardians and by a guardian ad litem, and it further appearing to the court that none of the defendants have filed answers except the Safe Deposit and Trust Company of Baltimore, as trustee, under the will of Richard Joshua Reynolds, and Forrest G. Miles, as guardian ad litem for Anne Cannon Reynolds and William N. Reynolds, and it further appearing to the court that all necessary parties to this action have been served with summons, or have accepted service of summons: *Page 269 
Upon a consideration thereof and of the complaint and the answers of the Safe Deposit and Trust Company of Baltimore as trustee under the will of Richard Joshua Reynolds and Forrest G. Miles, guardian ad litem, and the will of Richard Joshua Reynolds referred to in the complaint, which said will is filed in the office of the clerk of this court and is recorded in Book No. 8 of Wills on page 91, the court finds from the admissions in the pleadings and the evidence offered the following facts:
The plaintiff is the son and eldest child of Richard Joshua Reynolds, who died, a resident of Forsyth County, North Carolina, on 29 July, 1918, leaving surviving him a widow, Katherine Smith Reynolds (subsequently Katherine Smith Johnston) and four minor children.
At the time of the death of said testator his total estate aggregated about $11,000,000 in value, and the approximate then value of the share to be held in trust for each child was one million eight hundred thousand dollars ($1,800,000).
The plaintiff, Richard J. Reynolds, attained the age of 21 on 4 April, 1927; his mother, the widow of said testator, died prior to his attaining said age; and by decree of this court passed in a cause instituted for the purpose of determining the amount of income which should be paid him by the trustee, it was determined that the trustee shall pay him fifty thousand dollars ($50,000) per annum out of the income, until he should attain the age of 28, and the trustee has accordingly so done.
On or about 17 April, 1929, the plaintiff filed with the trustee a statement of his affairs for the year 4 April, 1928, to 4 April, 1929, as the basis for his claim to receive payment out of said trust estate or share, of a sum equal to twice the amount of savings claimed to be shown by said statement, in pursuance of the provisions of item fourth, subsection 6, of said will, and elected to have any such payment or allowance made in stock of the R. J. Reynolds Tobacco Company at par, out of the shares of such stock held in said trust; the items of said statement as filed being set forth in paragraph 7 of the plaintiff's complaint.
The defendant, trustee, has admitted the correctness of said statement, except with respect to the disputed items hereinafter mentioned, and recognized net savings shown by the statement for the period in question in the amount of nineteen thousand eight hundred and eighty-five dollars and twenty-two cents ($19,885.22), for which it transferred and delivered to the plaintiff Class B stock of the R. J. Reynolds Tobacco Company out of the shares held by it as such trustee aggregating thirty-nine thousand and seven hundred and seventy-seven dollars and forty-four cents ($39,777.44) in par value being twice the said amount of savings so recognized); said payment and delivery having been made, *Page 270 
however, without prejudice to the right of the plaintiff to claim a further amount or amounts, in such stock, upon the basis of his said statement.
That the items in said statement which were not recognized, but were disallowed by said trustee upon the ground that they were not properly included under the terms of said will in fixing the basis of the plaintiff's claim, consist of and comprise the following items in said statement, viz.:
 Income received from the estate of Katherine S. Johnston ............................. $ 54,473.71
 Income received from the estate of Richard J. Reynolds ................................ 50,000.00
 Amount received from the estate of William R. Reynolds ................................ 783.70
 Amount received from Safe Deposit and Trust Company of Baltimore .................... 5,121.74 ---------- $ 110,379.15
That of said items so rejected or disputed by the trustee, the item of fifty-four thousand four hundred and seventy-three dollars and seventy-one cents ($54,473.71) is the amount of income received by the plaintiff during said year from the trust estate of his mother, Katherine S. Johnston, the widow of said testator, and was paid out of the income from the trust created by her will, of which will a copy is filed in the evidence in this case.
The item of fifty thousand dollars ($50,000) is the amount paid by the defendant trustee to the plaintiff during the said year from the income of the trust estate under his father's will, as hereinbefore mentioned.
The amount of seven hundred and eighty-three dollars and seventy cents ($783.70) was the distributive share of the plaintiff, being principal which he received from the estate of his uncle, W. R. Reynolds, in said year.
The item of five thousand one hundred and twenty-one dollars and seventy-four cents ($5,121.74) was a gift to the plaintiff from the Safe Deposit and Trust Company of Baltimore of a portion of its commissions as trustee of said estate, received by the plaintiff during said year.
The item of twelve hundred dollars ($1,200) appearing in said application or statement should be deducted from the personal expenses shown by said application or statement, and was put on the first side *Page 271 
of said application or statement to balance this nondeduction, and has been allowed for by the trustees in the payment already made to the plaintiff, as aforesaid.
The income from the trust share of the plaintiff under his father's will has been more than sufficient since his father's death to pay him the sum of $50,000 a year, the 203,543 shares of R. J. Reynolds Tobacco Company Class B stock held in said trust share alone paying at present dividends at the rate of $3 per share per annum.
At the time of the death of said testator the stock of the R. J. Reynolds Tobacco Company had a par value of $100 a share; and the Class A stock was worth $250 per share, and the Class B stock $205 per share, the only difference between said two classes of stock being that Class A stock had the sole voting power, and entitled an employee owner to share in the bonus plan of said company. On 4 April, 1929, being the date as of which the plaintiff filed his application with the defendant, trustee, the value of the share of the estate, held in trust for him under his father's will, which then included 207,520 shares of Class B stock of the said R. J. Reynolds Tobacco Company (but no Class A stock) was about $21,000,000; and at said time the par value of said Class B stock was $10, and the market value thereof was $55 per share. On 18 November, 1930, the date of the hearing of this cause, the Class B stock of the R. J. Reynolds Tobacco Company had a market value of $45 per share.
That the statements as to the family and relatives of said testator, Richard Joshua Reynolds, as set forth in paragraphs 12 and 13 of the plaintiff's complaint are true and correct.
Upon the record before it, the court orders, adjudges and decrees that by true construction of the will of said testator, Richard Joshua Reynolds, the items to be included in the statement furnished to the trustee in any year, as the basis for showing the amount made or saved by any of his children between 21 and 28 years of age, over and above all living expenses during such year, and from the total of which items the entire living expenses are to be deducted, should include only net earnings made by the individual efforts in any legitimate business or investment, and income saved from money, stocks or bonds or other productive property owned by such child, including the earnings and savings, as aforesaid, of the husband of any married daughter; and should not include amounts received by such child during such year, as either income or principal, from the share held in trust for such child during such year, as either income or principal, from the share held in trust for such child under said will, or income or principal so received by such child from the trust created by the will of the mother of said *Page 272 
children, or received during such year as next of kin or devisee or legatee of any other relative or other person, or gifts received from any other person without consideration; the annual statements to be filed by the children of the testator, Richard Joshua Reynolds, are to be filed as of the anniversary of the birth of the child filing the statement, and the correctness of the statement filed is to be determined solely by the trustee under the will, provided such determination is in good faith and is not arbitrary.
Upon the record before it the court orders, adjudges and decrees that the following items, to wit:
 $54,473.71, designated as income received from the estate of Katherine S. Johnston;
 $50,000.00, designated as income received from the estate of Richard J. Reynolds;
 $783.00, designated as an amount received from the estate of W. R. Reynolds, and
 $5,121.74, designated as an amount received as a gift from the Safe Deposit and Trust Company of Baltimore, included in the application or statement of the plaintiff,
filed with the defendant, Safe Deposit and Trust Company of Baltimore, trustee, and referred to in paragraph 7 of the complaint, all of which were rejected and disallowed by the Safe Deposit Company of Baltimore, trustee, as aforesaid, were properly rejected and disallowed, the court being of the opinion that said items are not within the terms of paragraph 6 of the will of Richard Joshua Reynolds.
The court is further of the opinion, and in accordance therewith orders, adjudges and decrees that the net amount forming the proper basis for accelerated distribution because of earnings or savings made by the plaintiff during said year, under paragraph 6 of item 4 ($19,885.22), and it appearing to the court from the admissions in the pleadings that the Safe Deposit and Trust Company of Baltimore, trustee as aforesaid, has delivered prior to the institution of this suit to Richard J. Reynolds $39,777.44 in stock of the R. J. Reynolds Tobacco Company at par, said delivery being made without prejudice to his rights to claim further payment on the basis of the application or statement submitted by him, it is ordered and adjudged that the action be dismissed, and that the costs thereof be taxed against the Safe Deposit and Trust Company of Baltimore as trustee under the will of Richard Joshua Reynolds to be paid in equal shares out of the trust funds held by it for the benefit of the children of the said Richard Joshua Reynolds under his said will. J. H. CLEMENT, Judge Presiding." *Page 273 
The plaintiff, Richard J. Reynolds, made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.
Richard Joshua Reynolds, of Winston-Salem, Forsyth County, N.C. died in August, 1918, leaving a last will and testament, codicil and nuncupative will, which said instruments were duly admitted to probate in said county in August, 1918, and recorded in office of the clerk of the Superior Court of said county in Book 8 of Wills, p. 91, etc.
At his death Richard Joshua Reynolds left surviving him his widow, Katherine Smith Reynolds and four children, Richard J. Reynolds, Mary Katherine Reynolds, Nancy Susan Reynolds and Zachary Smith Reynolds, all of the said children being minors.
Katherine Smith Reynolds subsequently married J. Edward Johnston and died in 1924, leaving a last will and testament, which was duly admitted to probate in said Forsyth County, N.C. and recorded in Book No. 9 of Wills, on page 19, in the office of the clerk of the Superior Court of Forsyth County, N.C.
The defendant, Safe Deposit and Trust Company of Baltimore, has entered upon the performance of the trusts prescribed in the wills of both Richard Joshua Reynolds and Katherine Smith Johnston, and is now in possession of the trust estates created by both of said wills, and is administering said estates.
Richard J. Reynolds, the eldest child and one of the legatees under item fourth of the will of Richard Joshua Reynolds and item seven of the will of Katherine Smith Johnston, attained the age of 21 years on 4 April, 1927.
After the said Richard J. Reynolds became of age in a proceeding in the Superior Court of Forsyth County, N.C. instituted by the Safe Deposit and Trust Company of Baltimore for an interpretation of item fourth (paragraph 5) of the will of Richard Joshua Reynolds, the said Safe deposit and Trust Company of Baltimore was duly directed by the judge of the said court to pay to the said Richard J. Reynolds the sum of $50,000 per annum until he should attain the age of 28 years, and that the said Safe Deposit and Trust Company of Baltimore has paid and is now paying to the said Richard J. Reynolds, as provided in the said will as interpreted by the court in the said proceeding, the sum of $50,000 per year. *Page 274 
Richard J. Reynolds filed with the Safe Deposit and Trust Company of Baltimore a statement of the affairs of Richard J. Reynolds for the period from 4 April, 1928, to 4 April, 1929, as follows:
"INCOME — 4 APRIL, 1928, TO 4 APRIL, 1929.
 From estate Katherine S. Johnston .................... $ 54,473.71 From estate R. J. Reynolds ........................... 50,000.00 From balance estate W. R. Reynolds (sale Curtiss Field) ..................................... 783.50 From Roosevelt Field, Inc. ........................... 87,970.75 From Safe Deposit and Trust Co. (payment on $85,000.00 note) . .............................. 5,121.74 From dividends ....................................... 9,671.25 From rentals ......................................... 2,760.00 From salaries ........................................ 3,600.00 From personal checks of R. J. Reynolds ............... 1,200.00 ------------ Total ........................................... $ 215,581.15
EXPENSES — 4 APRIL, 1928, To 4 APRIL, 1929.
 Business expense ...................................... $ 11,617.90 Personal expense ...................................... 51,596.21 Interest .............................................. 17,040.06 Taxes — income ........................................ 31.00 Taxes, other than Income .............................. 2,362.67 Real estate, commissions and expenses ................. 2,664.84 Repairs to rental property ............................ 4.10 ------------ Total ............................................ $ 85,316.78 Total income 4 April, 1928, to 4 April, 1929 $ 215,581.15 Total expenses 4 April, 1928, to 4 April, 1929 85,316.78 ------------ Net profit ....................................... $ 130,264.37
Richard J. Reynolds demanded of the Safe Deposit and Trust Company of Baltimore, as trustee under paragraph (6) of item fourth of the will of Richard Joshua Reynolds the sum of $ 260,528.74 (double the amount contended by him as his net profits) in stocks of the R. J. Reynolds Tobacco Company at par, based upon the said statement, making said claim according to his contention under paragraph (6) of item fourth of the will of Richard Joshua Reynolds. *Page 275 
The trustee was willing to allow the said claim except as to the following items of income in said statement as follows:
 Estate Katherine S. Johnston ............ $ 54,473.71 Estate R. J. Reynolds ................... 50,000.00 From estate W. R. Reynolds .............. 783.70 From Safe Deposit and Trust Co. ......... 5,121.74 ------------ Total as contended by plaintiff ..................... $ 130,264.37 Less amount as contended by defendant ............... 110,379.15 ------------ Total, as contended by defendant $ 19,885.22
The trustee recognized a net income for the period in question of $19,885.22, for which $39,777.44 in stocks of the R. J. Reynolds Tobacco Company at par have been delivered to Richard J. Reynolds with the understanding that such delivery should be without prejudice to his right to claim any further payment upon the basis of the statements.
All of the children of Richard Joshua Reynolds who were living at his death are now living, as follows:
Richard J. Reynolds (unmarried).
Mary Reynolds Babcock (husband, Chas. Babcock).
Nancy Reynolds Bagley (husband, Henry Walker Bagley).
Zachary Smith Reynolds (wife, Anne Cannon Reynolds).
That of said children, Richard J. Reynolds and Mary Reynolds Babcock are now of age, being more than 21 years of age, and the others are minors under the age of 21 years; that Katherine S. Johnston died in the year 1924, and that her husband J. Edward Johnston, and one son by that marriage, J. Edward Johnston, Jr., survived her.
This Court in this action is called upon to construe item 4, paragraph (6) of the will of Richard Joshua Reynolds, which is as follows:
"(6) To encourage habits of industry, thrift and economy in my children, I hereby make the following provision for further payments to them after they reach the age of twenty-one (21) years, and before they attain the age of twenty-eight (28) years, to wit: I direct said trustee, Safe Deposit and Trust Company, annually, upon any of my children presenting to it a statement showing to said trustee's satisfaction that he or she has made byindividual effort, in any legitimate business or investment, or has savedfrom money, stocks or bonds owned by him or her, any money over and aboveall living expenses, to pay to such child, out of his or her share of my estate, if necessary to the full extent of such share, two dollars forevery one dollar so made or saved. Payment will be made in cash; or, if the child entitled thereto so effects, in stocks or bonds at par, including stocks in R. J. Reynolds Tobacco *Page 276 
Company (subject to sale restrictions as to last named stocks as shown in item fifth hereof). But, said trustee is directed to exclude and eliminatefrom any annual statement submitted under this provision of my will anymoney made in buying and selling stocks, or commodities of any kind, onmargin (commonly known as dealing in `futures'), or earnings of profitsderived from speculation of that character. Any married daughter may avail herself of this provision of my will and may, in filing annual statements as herein required and subject to the same restrictions, include therein like earnings and savings, over and above expenses, by her husband." (Italics ours.)
The plaintiff introduced in part the deposition of H. H. Shelton, an attorney, who became general counsel of the R. J. Reynolds Tobacco Company on 1 January, and continued as such counsel until April, 1921.
"Q. 5. Did you have occasion about that time to confer with Mr. Richard Joshua Reynolds, at that time president of R. J. Reynolds Tobacco Company in Winston-Salem, in regard to redrafting the whole or part of his will? Answer: I did.
Q. 6. In that connection did he present to you the original or a copy of a will executed by him in accordance with the laws of the State of North Carolina? Answer: He did present such a will to me. I think it was a copy.
Q. 7. I hand you a paper marked Exhibit A, and call your particular attention to the last paragraph on page 6, running over on page 7, and ask you if that is a copy of a paragraph in his will, when he asked you to redraft his will on or about 25 July, 1917? Answer: The paper you hand me, marked Exhibit A, is a copy of the will of Mr. Reynolds presented to me, and the copy he presented to me contained the paragraph to which you call attention and which begins on page 6 with the words `Any further payments,' and concludes on page 7, about the middle thereof, with the words, `Conditions above provided.'
Q. 9. What changes did you make in the paragraph beginning on page 6 of Exhibit A, referred to in your answer to Question No. 7? Answer: It appears that I reconstructed the paragraph referred to in my answer to Question 7, and which is a part of item fourth of Exhibit A, appearing on pages 6 and 7 thereof. The reconstructed paragraph is a part of item fourth, subparagraphed (6). The first material change appearing in Exhibit B was to declare the purpose and reasons for the remaining provisions thereof. It was to encourage habits of industry and economy that the subsequent provisions were made. The next and the important change was to rewrite the provision in Exhibit A, which reads: `In any legitimate business or investment, or saved from the earnings of money or stock or bonds owned by them,' by *Page 277 
using the language in Exhibit B, reading: `In any legitimate business or investment, or has saved from money, stock or bonds owned by him or her.' Another important change which probably should have first been mentioned in this answer was to use the words `two dollars for every one dollar so made or saved,' in lieu of the words in Exhibit A, reading `for every one dollar made.' The fact that this change was made is emphasized by the fact that the clause `two dollars for every dollar so made or saved' was italicised. In Exhibit A, the two dollar for one dollar idea was made effective in favor of any married daughter if the statement required disclosed a dollar `made by the industry or good management of her husband.' Whereas, in the will as drafted by me this reward was made available to a married daughter if the statement required disclosed a sum of money resulting from `like earnings and savings.'
Q. 10. Do you recall any instructions given to you by Mr. Reynolds or any conversations with him in connection with the paragraph on pages 6 and 7 of Exhibit A, and the drafting of paragraph 6 of item fourth in Exhibit B? Answer: I do recall such instructions.
Q. 11. What were they? Answer: Mr. Reynolds discussed the provisions of his will, and especially the provisions contained in the paragraphs referred to with me on various occasions prior to my actually finishing the will which he executed. The will as drafted by me was drawn strictly in accordance with his instructions, and I recall very clearly that we discussed the difference between the two paragraphs mentioned and his idea was to enlarge the provisions of Exhibit A, so that the two dollar for one idea would apply to money resulting from industry and to money resulting from economy. His idea was, as he explained it often to me, to encourage his children in industry and to equally encourage them in saving their money from whatever source it came."
The defendant, Safe Deposit and Trust Company, objected to each of the questions and answers contained in this deposition. The court sustained the objection, and plaintiff excepted as to each question and answer. We think the court below correct in sustaining the objections.
This matter has been decided adversely to plaintiff's contention over a century ago. In Reeves v. Reeves, 16 N.C. at p. 389, decided June, 1830,Ruffin, J., speaking to the subject, said: "Then as to the parol evidence and answer of the administrator, to vary this construction; it is impossible that the idea should be admitted for a moment. It would be to upset all wills by the loosest proof. . . . But it would be extremely dangerous, entirely too much so, to say, that the testator did not devise, because, in law, the paper would pass a larger estate, and more property, than witnesses supposed the maker of it meant. The *Page 278 
meaning of the testator is to be judged of by his written words; and they must stand, unless it be shown that he was imposed on, and did not know they were in his will; or knowing that they were there, that he had been induced by undue influence to execute it against his own wishes; which goes on quite a different ground, namely, weakness."
"Where the language is clear as to the intent of the testator, and there is no latent ambiguity, there can be no extrinsic proof. In McDaniel v.King, 90 N.C. 602, Merrimon, C. J., said: `If a will is sufficiently distinct and plain in its meaning as to enable the Court to say that a particular person is to take, and that a particular thing passes, that is sufficient, and it must be construed upon its face without resorting to extraneous methods of explanation to give it point. Any other rule would place it practically within the power of interested persons to make a testator's will, so as to meet the convenience and wishes of those who might claim to take under it.' Williams v. Bailey, 178 N.C. 632." Kidderv. Bailey, 187 N.C. at p. 508-9; Watkins v. Flora, 30 N.C. 374; Stowev. Davis, 32 N.C. 431; Hester v. Hester, 37 N.C. 330; Deaf Institute v.Norwood, 45 N.C. 65; Hathaway v. Harris, 84 N.C. 96; Taylor v. Maris,90 N.C. 619; Patterson v. Wilson, 101 N.C. 594; In re Shelton's Will,143 N.C. 218.
In Jarmon on Wills, Vol. 1, ch. 15, sec. 1, we find: "As the law requires wills both of real and personal estate (with an inconsiderable exception) to be in writing, it cannot, consistently with this doctrine, permit parol evidence to be adduced, either to contradict, add to, or explain the contents of such will; and the principle of this rule evidently demands an inflexible adherence to it, even where the consequence is the partial or total failure of the testator's intended disposition; for it would have been of little avail to require that a will ab origine should be in writing, or to fence a testator round with a guard of attesting witnesses, if, when the written instrument failed to make a full and explicit disclosure of his scheme of disposition, its deficiencies might be supplied, or its inaccuracies corrected, from extrinsic sources. No principle connected with the law of wills is more firmly established or more familiar in its application than this; and it seems to have been acted upon by the judges, as well of early as of later times, with a cordiality and steadiness which show how entirely it coincided with their own views. Indeed, it was rather to have been expected that judicial experience should have the effect of impressing a strong conviction of the evil of offering temptation to perjury. There are numerous cases in which the courts have refused to admit parol evidence to contradict the express terms of a will. But where a will contains an erroneous recital or statement of fact, parol evidence is sometimes admissible to contradict it." *Page 279 
The cases relied on by plaintiff appellant, Wooten v. Hobbs, 170 N.C. at p. 214; Cecil v. Cecil, 173 N.C. 410, and Brown v. Brown. 195 N.C. 315, are not inconsistent to the position here taken.
In the Brown case, supra, the testator added codicils to his will, and it was held that to effectuate the intent of the testator, as expressed by the entire writing, the will will be construed with the codicils.
The court below, in the judgment construing item 4, paragraph (6), held: "That by true construction of the will of said testator, Richard Joshua Reynolds, the items to be included in the statement furnished to the trustee in any year, as the basis for showing the amount made or saved by any of his children between 21 and 28 years of age, over and above all living expenses during such year, and from the total of which items the entire living expenses are to be deducted, should include only net earnings made by individual effort in any legitimate business or investment, and income saved from money, stocks or bonds or other productive property owned by such child, including the earnings and savings, as aforesaid, of the husband of any married daughter; and should not include amounts received by such child during such year, as either income or principal, from the share held in trust for such child under said will, or income or principal so received by such child from the trust created by the will of the mother of said children, or received during such year as next of kin or devisee or legatee of any other relative or other person, or gifts received from any other person without consideration; the annual statements to be filed by the children of the testator, Richard Joshua Reynolds, are to be filed as of the anniversary of the birth of the child filing the statement, and the correctness of the statement filed is to be determined solely by the trustee under the will, provided such determination is in good faith and is not arbitrary." We see no error in this construction of the will.
The construction of paragraph (6) of item fourth set forth in the judgment appealed from, is correct, and that the statements to be filed with the trustee in pursuance of said paragraph should include only:
(1) Net earnings derived from individual efforts of the applicant, in any legitimate business or investment, and
(2) Income saved from money, stocks, bonds or other productive property owned by such child; and should not include, as contended by the appellant, either
(1) Income received from this trust under his father's will, (2) income received from the trust under his mother's will, both derived from property not "owned" by him (3) or amounts received, in money or property, from the estates of other relatives, nor as a gift neither earned nor derived from property owned by the appellant. *Page 280 
The appellant's main contention is that any money or property received in any way during the course of the year, in so far as it is not lost or spent in the course of the year, is "saved" within the meaning of this paragraph.
The paramount idea in the mind of the testator, Richard Joshua Reynolds, in item 4, paragraph (6), was "To encourage habits of industry, thrift and economy in my children," etc. No doubt his great fortune was accumulated in this way, and he wanted to perpetuate this attitude in his children, those that came after him. A laudable purpose and the very keystone of success in any business enterprise. Then he goes on and explains how this must be done, not by buying and selling stocks, or commodities of any kind, on margin (commonly known as dealing in futures) or earnings or profits derived from speculation of that character. This successful business man no doubt having seen the tragedy and wreckage in his long and successful business career of men and women dealing in futures and speculation on margin, condemns it by not allowing any money made in that way to be included in what his idea constituted the encouragement in his children of habits of "industry, thrift and economy." He was careful to define what his children should be rewarded for "individual efforts, in any legitimate business or investment or had saved from money, stocks or bonds owned by him or her any money over and above all living expenses." And then such child should have "two dollars for every one dollar so made or saved."
We cannot see how the amount received from his mother's estate, $54,473.71, or from his uncle's estate $783.70, or his allowance under his father's estate $50,000, or refund of commissions from Safe Deposit and Trust Company of Baltimore, the trustee, under his father's will, $5,121.74, were such funds from "individual effort . . . saved from money, stocks or bonds owned by him or her." These items were not "saved from money, stocks or bonds owned by him or her," but came to him by inheritance from his mother's and uncle's estates, and provision under his father's will, and a refund of commissions from defendant Safe Deposit and Trust Company of Baltimore.
Many meanings are given to the word "save," but we think the following is applicable here, taken from the Century Dictionary: "(7) To lay by, little by little, and as the result of frugal care; lay up; hoard; as, he has saved quite a good sum out of his scanty earnings." This is ordinarily the generally accepted meaning and well understood among business men, and we think this was the testator's meaning when he used the word "saved" or "so made or saved."
The construction suggested by the trustee and adopted by the lower court in the judgment appealed from, is not only strictly in accordance *Page 281 
with the letter of the clause in question, but attributes to the testator the rational intent of rewarding a child to the extent that such a child could show that, from his own independent efforts and means, he has earned, made, and saved during the year a surplus over and above his living expenses. Any attempt to give to this clause a wider construction and effect than its literal meaning, necessarily leads to results which we think are totally contrary to the expressed design, purpose and object of the entire clause or provision and the intention of the testator.
We see no reason to go into a further analysis of the language of this part of the will of Richard Joshua Reynolds. The testimony of the attorney, H. H. Shelton, can have no bearing on this controversy.
In McIver v. McKinney, 184 N.C. at p. 396, citing numerous authorities, the following observation is made: "The question is not what the testator intended to express, but what he actually expressed in his will, when all its provisions are considered and construed in their entirety."
This successful business man condemned dealing in futures and speculation of that character — buying and selling stocks or commodities of any kind on a margin, so also it is outlawed by the General Assembly of this State. In construing C. S., 2144, this Court said, inWelles Co. v. Satterfield, 190 N.C. at p. 95: "The statute in this State makes contracts for `futures' utterly null and void. The statute clearly defines what are `future' contracts; `Whereby the parties thereto contemplate and intend no real transaction as to the article or thing agreed to be delivered.' The Legislature in its wisdom has seen fit to pass a drastic act to stop this kind of gambling or vicious contracts, no doubt fully aware of the wreckage of the human family. The mischief the act is intended to prevent is plain — that no one should get something for nothing, or nothing for something." See Public Laws of N.C. 1931, ch. 236.
The record discloses: "Mary R. Babcock, a sister of the plaintiff, and entitled to file statements in the same manner as the plaintiff, appears as a defendant in this case. Her interest, however, is identical with that of the plaintiff, and she excepted to the judgment signed by the court for the purpose of attacking the construction of the will made by the court jointly with the plaintiff. For that reason no separate case on appeal was made, the interest of the appealing parties being identical."
For the reasons stated, the appeal of Mary R. Babcock will be governed by the law as herein stated, applying to plaintiff's appeal.
In the judgment of the court below we find, in law, no error. The judgment is
Affirmed. *Page 282