The general principle on which this case must be decided is, that where such words are used in a will, in relation to personal property, as would have created an estate-tail in real property, they give the absolute (181) property in personalty, and the limitations over are void. The exception to the rule is, that if it appear from any clause or circumstance in the will that the testator intended to give it over, only in case the first taker had no issue living at the time of his death, then the subsequent limitation will be good as an executory devise. It was impossible for M. L. Davidson to die without heirs while the ulterior legatees were alive; the word "heirs" must therefore be construed heirs of the body, and would, if applied to real estate, before the act of 1784, have constituted an estate-tail.
It is not material to inquire whether the words of the will would have created an express estate-tail, or an estate-tail by implication; because, in either case, a limitation over, after an indefinite failure of issue, is too remote. If the limitation depend alone upon the import of the words, "dying without issue," the question still recurs, are there any circumstances or expressions in the will from which it can be justly inferred that the intention was to confine the signification of the words to a dying without issue "then living"?
It has been conceded by the complainants' counsel that a limitation over, after a general dying without issue, is too remote; but it is argued that the words, "dies without having heirs," restrict it to the death of M. L. Davidson; that they show the intention of the testator to have been so; and that this ought always to be effectuated, where the Court is not compelled by the law to give a different construction to the words.
The foundation of this argument must be laid by proving that the words used in this will have a different signification from the words, "If he dies without heirs"; for, if the two sets of expressions mean the same thing, the Court is not at liberty to depart from the established judicial sense of words, whatever may be the intention. Chandless v. Price, 3 Ves., 102. (182) It is probable, though I am aware that there are some very respectable opinions to the contrary, that a limitation over, on the event of dying without issue, is always intended to apply to a failure of issue at the period of the death of the first taker; yet the authorities uniformly construe it an indefinite failure, unless the words are controlled by the intention appearing from other parts of the will.
This construction is highly technical and refined, and seems generally considered to be derived from the Statute de donis, *Page 87 
which recites, "and whereas, if such feoffees had no issue, and even if there had been any issue which had afterwards died, the land ought, by the express form of the gift, to revert to the donor or his heirs."
If the question were new in this State, I will hazard the conjecture that this Court would construe these words in their natural sense, and reject the artificial one; but this cannot now be done without overturning a long train of authorities which have been repeatedly confirmed and acted upon by all the tribunals of this country, and according to which controversies have been adjudged from the first settlement of the State. We could not change the legal operation of these words without removing landmarks and throwing a very large portion of the property of the citizens into litigation and insecurity.
Between the words, the settled construction of which has thus become a part of the law of the land, and those employed in the will before us, I am unable to perceive a difference; and I collect from the authorities that they always receive the same construction, whenever the question is, as to the remoteness of the limitation.
In Boden v. Watson, Ambl. 398, 478, there was a bequest of personal estate to one for life, and if he has no heirs, over. The chancellor held it to be the same as if given to him for life, and to the heirs of his body, and if no such heirs, then over; that the failure of heirs was not confined to a particular time, but was general. Upon this case, it need not be remarked, (183) that the words would seem, to a person who receives their meaning from common acceptation, to restrain the failure of heirs to the death of the devisee; and that if "having" has any peculiar force from being a participle of the present tense, "has" is at least of as much efficacy, from being a verb of the present tense.
In Crook v. De Vandes. 9 Ves. 202, there was a devise and bequest to A. for life, and the heirs of his body, with a limitation over, if he has no such heirs. It was held to be an estate-tail in the real, and an absolute interest in the personal estate, the limitation over being void. Why could not the word "has" have restrained the failure of heirs to the death of A. in that case? Because it imported the same thing with a general dying without heirs. The word "having," in this will, can signify neither more nor less.
In Tate v. Talley, 3 Calls Rep. 354-361, a devise was made of land to I. T., one of the testator's sons, with a proviso that if the said I. T. should die, not having any lawful heir of his body, then the said land should go to another son. This was held to *Page 88 
be an estate-tail in I. T. The equivalent import of the words is further shown in King v. Mellish, 1 Vent., 231, and Wylde v. Lewis, 1 Atkyns, 433.
It is further argued for the complainants, that the words "then and in that case," show the intention to be to confine the having no heirs, to the period of the death of M. L. Davidson.
The word "then" was relied upon in Beauclerk v. Dormer, 2 Atkyns, 311, but the chancellor laid no stress on it, holding that, though in its grammatical sense, it was an adverb of time, yet in the limitation of estates, it is a word of reference, and relates to the determination of the first limitation. In Biggs v. Bensley, 2 Bro. Ch., 187, the words were, "in case of the death (184) of F. H. without issue," and it was argued that the death of F. H. was the circumstance to regulate the question; it was to be decided then; if the ulterior legatee took then, he took absolutely; if he did not take then, he never took. But it was held, in conformity with the case of Beauclerk v. Dormer, that the word then could not, and never did make the difference; that it was merely a word of relation, and not an adverb of time. In Royall v. Eppes, 2 Mun., 479, the words, of the will were, "it is my will and desire, that in case my son should die without heir of his body, lawfully begotten, that then and in that case, I give to my wife, Lucy," etc. These expressions were relied on by the counsel for the ulterior legatee for the same purpose as in the cases before quoted. But the Court in giving the opinion, say, "that while, even in relation to personal estate as to which a more liberal rule of construction has prevailed, the Court does not see that either the terms, then and in that case, or the word heir, used in the singular number, would justify them in adopting the restrictive construction, under the decisions on this subject, either in this country or in England." They then proceed, and do adopt the restrictive construction, from another, and a stronger circumstance in the will. This point, then, seems to be completely settled by authority.
That numerous class of cases has been referred to, which shows what slight circumstances have been laid hold of, to tie up the generalty of the expression, "dying without issue," and to confine them to dying without issue, living at the time of the person's decease.
In Target v. Gaunt, 1 P. Wms., 432, a term was devised to A for life, remainder to such of his issue as he shall appoint, and if A die without issue, remainder to B. It was held to be a good limitation to B, because the testator must have intended such of A's issue as he might appoint the term to, and that must be intended issue then living. *Page 89 
This case contains a pretty clear explanation of what (185) was meant by "dying without issue," for it could not be indefinite, if A was to make the appointment. Indeed, in every one of these cases, which it would be unprofitable toil to restate, the legal meaning of the words was narrowed by expressions or circumstances that raised a fair inference of restrictive intention, or, as it has been expressed, the construction was varied by circumstances arising on fair demonstration. There do not appear to me to be any such in this will that will justify the Court in wandering from the settled construction; and I therefore think the bill should be dismissed with costs.