Ruffin, C. J.
 

 There is no doubt upon the construction of the will. It is clear, that, before the Act of 1827, a limitation over after a dying without an heir, or heirs of the body, is too remote; and it is equally clear, that by that Act, such a limitation is made good, by construing it to be a limitation to take effect at the death of the person without having an heir living at the time of the death. The question upon this point is, then, whether the Act of 1827 operates upon this will, or not. The session of the General Assembly of that year began on the 19th day of November 1827 ; but this act was ratified and signed by the Speakers of the two Houses on the 7th day of January 1828, and has a proviso, “ that the rule of construction, contained in this Act, shall not extend to any deed or will executed before the 15th day of January next.” The enquiry is, whether the Act was in force from the 15th of January 1828, or 1829; and that depends upon the period to which the word
 
 next
 
 relates. It means “ next after but “next after” what ? The adjective
 
 next,
 
 no doubt, agrees with “January,” and not with the “day” of that month : meaning “next January,” and not “the next fifteenth day of January.” If therefore,
 
 next
 
 relate to that point of time, when the Act was finally passed, it would not be in force until January 15th, 1829. But we believe, that the rule of construction is too inveterate to be resisted, that unless an Act refers to its ratification as the time from which it speaks, it must be considered as speak, ing by relation from the beginning of the session of the legislature, at which it passes, in the same manner that a judgment relates to the first day of the term. By the Act of 1799, the laws are to be in force only after thirty days from the end of the session, unless the commencement of their operation be in the Acts themselves otherwise directed. Here, that has been done ; and the difficulty is in.fixing upon the time meant in the statute it
 
 *116
 
 self. Now, iftbe words had been, that the Act should take effect, ‘-from and after the passing of. the Act,” unquestionably the relation would have been to the first day of the Session.
 
 Latless
 
 v.
 
 Holmes,
 
 4 T. R. 660. So where an Act laid a duty on rice, “ hereafter to be exported,” it was held, by the opinion of the twelve Judges that,
 
 hereafter
 
 referred to the beginning of the session, and that a duty was due on rice exported after the session began, but before the Act was in fact passed.
 
 Panter’s case, 6
 
 Bro. P. C. 553. Certainly, that was a remarkable instance of the application of the principle, producing manifest injustice. In the case before us, happily, it produces no injustice : for doubtless, it effects the real intention of this testator, and is a proper application of a beneficent rule of construction, which the legislature found necessary to prevent the frustrating of the intentions of testators upon technical grounds. The case of
 
 Brown
 
 v.
 
 Brown,
 
 3 Ire. 134, was cited at the bar to shew, that the Court had already construed the Act of 1827, as operating on wills made after January 15th, 182S. But that is giving to the remark in that case more weight than it ought to have; for, when the opinion was given, the original Act was not looked at, but its contents were taken upon trust from the
 
 Rev. St c.
 
 43,
 
 s.
 
 7. That could not use the term “next,” but necessarily designated the particular day from which instruments had been operated on by the Act; of 1S27; and that day is January 15th, 1S28. For, undoubtedly, the Legislature of 1S36 did not mean to carry back the rule of construction, by virtue of th.e law of that year, to a year earlier than it had been fixed by the law of 1827 ; but the day fixed in 1831 is that which was understood as having béen intended in 1827. So that, although there has really been heretofore no judicial, there has been a legislative, exposition of the Act of 1827, which is entitled to the highest respect. Consequently the Court must now hold, in conformity with the general and ancient principle, and with
 
 *117
 
 the particular sense given to the Act of 1827, by the Legislature, that “ the 15th day of January next” meant next after” the commencement of the session in November 1827 ; and therefore that the limitation over to the testator’s children is good.
 

 There is no difficult}'' as to the persons, who take under the limitation to the testator’s children. There were eight children living, when the testator made his will, and when he died, and no other was afterwards born. As the limitation is not to “surviving children,” but to “my children,” all of the children took immediate interests, that were transmissible to executors.
 
 Devisene
 
 v.
 
 Mullo,
 
 1 Bro. C. C. 530,
 
 Atto. Gen.
 
 v.
 
 Crispin.
 
 Id. 388,
 
 Lewis
 
 v.
 
 Smith,
 
 1 Ired. 145.
 

 The defence, founded upon an adverse possession and the statute of> limitations, would be unavailing, and the plaintiffs would have a decree, were there no other more serious objection to the bill. The- defendant artfully avoids stating f'roqi wbomor upon what terms he acquired the possession ef-ihe woman Sophy — the answer saying merely, that in the life-time of Jabez Weeks the defendant became possessed “ of the slave and has had possession ever since, claiming her as his own, and adversely to the testator, the defendant’s children, the plaintiffs and all the world.” But it is charged in the bill, and established by the proofs, that the slave belonged to the testator, and that, shortly after the marriage of the defendant with his first wife, about 1824, the testator sent the negro to the defendant. It is clear, then, that the defendant held her as a bailee, either upon an express loan, or a gift by parol from his father-in-law; and therefore his possession was not adverse and could not set the statute in motion.
 
 Collier
 
 v.
 
 Poe.
 
 1 Dev. Eq. 55,
 
 Palmer
 
 v.
 
 Faucett, 2
 
 Dev. 240,
 
 Green
 
 v.
 
 Harris,
 
 3 Ired. 210. That was the state of things when the testator died. There is then, an attempt to bring the case within the rule of
 
 Martin
 
 v.
 
 Harden,
 
 2 Dev. and Bat. 504, by alleging, that, after
 
 *118
 
 the death of the testator, his executor, Elijah Weeks, demanded the slaves then in
 
 esse
 
 from the defendant, and that he refused to deliver them, “ claiming the title to be in himself.” But the defendant has not at all established such a demand, and refusal, as he pretends.. On the contrary, the plaintiffs have proved to the satisfaction of the Court, that the defendant did not set up a title in himself, but impliedly disavowed it. For, when the executor applied for the negroes, he told the defendant that his object was to hire them out for the benefit of the defendant’s infant children, to whom they had been bequeathed —which was in itself, an assent to the legacy; and the defendant, so far from setting up a claim of his own and refusing for that reason to surrender them, distinctly puts his refusal upon the ground, that he would himself be the guardian of his children, as he was as fit for that office as Weeks was. Accordingly, soon afterwards he became the guardian of his son, the daughter being then dead ; and he hired out the negroes for two or three years. It is clear that the hiring was in the character of guardian, as he bid them in himself. The statute of limitations, therefore, does not affect the case, as the defendant’s possession was never adverse, but that either of bailee or guardian, up to the death of the son, which happened about a year before the bill was filed.
 

 Another objection, however, is taken in Bell’s answer which seems to be fatal to the bill. It is, that the title of the other parties is legal, upon which they can have complete remedy at law. The bill purports to be founded on a tenancy in common of the slaves, and a right to have a partition of them. Upon that supposed state of the case, the answer of Bell insists, that he was in the adverse possession at the beginning of the suit, and therefore that the plaintiffs must establish their title at law, before they can have the decree they seek here. But, restricting the objection to that single point, it does not seem very formidable. It is true that is the rule in re
 
 *119
 
 spect to land. But the reason is, that an ejectment may be maintained by one tenant in common against another, upon an actual ouster, or upon an exclusive possession by one, who denies all right in the other and claims the whole for himself. The Court of Equity, therefore, requires the plaintiff to recover his share in ejectment or otherwise get into possession, before there will be a decree for partition.
 
 Garrett
 
 v.
 
 White, 3
 
 Ired. Eq. 131. But there cannot be a like rule with respect to personal things ; for joint-tenants or tenants in common cannot maintain detinue against each other for a share of such a chattel, nor even have trover or trespass, except for the destruction of the thing or its disposition in such way that it cannot be had for the purpose of partition.
 
 Lucas
 
 v.
 
 Wasson,
 
 3 Dev. 398. Of necessity, therefore, when the law gives the power to one of the owners to compel partition of slaves, .the Court to which the application is made, must decide the title, or have it decided under its direction. Then as to coming into the Court of Equity for that purpose, it is to be observed that partition is one of the subjects of settled equitable jurisdiction, although the estate be legal and the partition may be made upon writ at law. It is assumed upon the grounds of the more convenient and perfect relief in the Court of Equity, by reason of the power of the Court to enforce the discovery and production of title papers, and an account for profits and outlays, and apportioning the expenses of the partition and charging money for equality of partition. The jurisdiction, therefore, would necessarily have arisen upon the passing of the Act of 1829, giving the right of partition oí slaves between two or more owners. Indeed, before that Act it had been exercised; for it was upon that ground that the bill was sustained in
 
 Jones
 
 v. Zolli
 
 coffer,
 
 N. C. T. R. 212, 2 Hawks 623, where the defendant held the negro under a conveyance from three of the remaindermen.
 

 
 *120
 
 In the present case, however, the defendant is' not a tenant in common with the other parties, but they have the whole legal estate and may therefore recover the negroes from Bell at law, and have no ground for coming into this Court against him. We suppose he was thought to be one of the tenants in common in virtue of his marriage with the testator’s daughter Elizabeth, who survived her father, and was one of those entitled in remainder. That would have been the case, had the daughter Elizabeth survived either of the' grand-children, William and Caroline, so that the estate limited over would, either in whole or in part, have fallen into possession during the coverture. But it is stated in both the bill and the answers, that Mrs. Bell died before either of the children, so that, at her death, her interest was still in expectancy. Such an interest of the wife did not vest in the husband during the marriage, nor survive to him at law, but goes to her administrator for payment .of debts in the first place, and the surplus, if any, for the husband, under the statute of distributions. For, although the husband may assign, or release the wife’s choses in action, or convey her expectant legal interest in personal chattels,
 
 Burnett
 
 v.
 
 Roberts, 4
 
 Dev. 81, and
 
 Knight
 
 v.
 
 Leake,
 
 2 Dev. and Bat. 133, yet if he-do not assign or convey them during the coverture, they undoubtedly survive to her, or to her representative.
 

 This was formerly much controverted in this State It was once decided otherwise in
 
 Lewis
 
 v.
 
 Hines,
 
 1 Hay. 278. But the contrary was held soon afterwards in divers instances, and has continued to be held up to a very recent period, without any contradiction. The first case on the subject was that of
 
 Whitbie
 
 v
 
 Frazer,
 
 1 Hay. 275; and then, after
 
 Lewis
 
 v.
 
 Hines,
 
 followed in quick succession
 
 Blount
 
 v.
 
 Haddock,2
 
 Hay. 183, and Con. Rep. 75;
 
 McCallop
 
 v.
 
 Blount,
 
 Conf. Rep. 96;
 
 Johnston
 
 v.
 
 Pasteur,
 
 Id. 464;
 
 and Norfleet
 
 v.
 
 Harris,
 
 Id.. 517. Those cases seem to have settled the law in the estimation of the pro
 
 *121
 
 fession; for we do not find that the point was again raised, until the late case of
 
 McBride
 
 v.
 
 Choate,
 
 2 Ired. Eq. 610, where it was contended that a vested remainder of the wife, after a life estate in a slave, belonged to the husband and not the wife. But the Court held, that it did not vest in the husband and could not he bequeathed
 
 by
 
 him, bat, notwithstanding his bequest, survived to the wife, and there was a decree accordingly. What was said in the previous case of
 
 Hearne
 
 v.
 
 Kevan, 2
 
 Ired. Eq. 34, calculated to throw a doubt on this question, was an
 
 obiter dictum
 
 and passed without observation. The point did not arise in the case
 
 ;
 
 for no representative of the wife was before the Court, and
 
 it
 
 was perfectly immaterial to the plaintiff, whether his share belonged to her administrator or her husband ; as in neither case had they a right to interfere to prevent a sale of that undivided share, by a creditor of the husband, whose property the negroes were in equity, except as against the wife’s creditors. That the case was considered in that light by a majority of the Court is certain
 
 ;
 
 and it is so seen in the subsequent case of
 
 McBride
 
 v.
 
 Choate,
 
 in which the point came directly in judgment. In the present case, Mrs. Bell’s interest belongs to her administrator, Elijah Weeks, who is, indeed, made a party defendant.
 

 But he has not possession of any one of the slaves, and like the plaintiffs, he claims them from the other defendant Bell. The case then is, that five tenants in common of slaves sue three others for partition of slaves, not held by either one of them, but held by a third person, who is also made a party and claims to hold for himself, and had refused to surrender the slaves before this suit brought. As between that person, and the other parties, who are co-tenants, the controversy is purely legal, and they ought to sue him at law, and cannot transfer the jurisdiction to the Court of Equity, by making one or more of the tenants defendants with him and asking for a partition
 
 *122
 
 the slaves. With the partition the party, negroes, has nothing to do; and the owners must re-the negroes from him before they can divide them among themselves. The bill must, therefore, be dismissed with costs to the defendant Bell.
 

 Per Curiam.
 

 Decree accordingly.