SAMUEL WHITE, MARY WHITE RAMSEY, GEORGE LYNCH AND LUCILLE LYNCH THOMPSON v. BILLY ROY ALEXANDER AND IVA WHITE

No. 74

(Filed 14 May 1976)

1. Wills § 33— devise to life tenant — remainder upon death without heirs of body

Where testatrix devised property to her son for life with the provision that "if he shall die without heirs of his body" the son's widow should receive a life estate and the remainder should go "to my heirs," the Rule in Shelley's Case, the doctrine of merger and G.S. 41-4 did not operate to give the son a fee simple, defeasible or absolute, and the son received only a life estate, since it is clear that the testatrix used the words "heirs of his body" to mean the son's children.

2. Wills § 43— heirs of testator — determination at testator's death

A class of persons described as testator's heirs who are given an estate in remainder are generally those persons who in fact and in law constitute the heirs of the testator at testator's death.

3. Wills § 35— contingent remainder to testatrix's heirs — death without having child — time for determining heirs — effect of G.S. 41-4.

Where the remainder to testatrix's heirs is contingent upon the death of the life tenant without having had a child, G.S. 41-4 does not require that testatrix's heirs be determined as those persons who would have fitted this description had testatrix died immediately after the life tenant.

**4. Wills § 35— limitations on failure of issue — purpose of G.S. 41-4**

The purpose of G.S. 41-4 is to save gifts over upon the contingency of someone's dying without issue even if the contingency occurs after the death of the testator or after some estate or period subsequent to his death.

**5. Wills § 35— limitations on failure of issue — construction of G.S. 41-4**

The words in G.S. 41-4 that a gift over "shall be . . . a limitation to take effect when such person dies not having such heir, or issue, or child . . . living at the time of his death, or born to him within ten lunar months thereafter" means simply that the interest will be sustained and will pass in possession when and if the contingency, *i.e.*, dying without issue, occurs even if this event takes place after the death of the testator or grantor or after some intervening estate or period following his death; these words do not mean that a determination of those persons who take the interest must necessarily wait until that event occurs.

**6. Wills § 43— devise to son for life, remainder to heirs — exclusion of son as heir**

Where testatrix devised property to her son for life with the provision that "if he shall die without heirs of his body," the son's widow should receive a life estate and the remainder should go "to my heirs," the testatrix intended the contingent remainder "to my heirs" to refer to all who at her death would be her legal heirs in the technical sense with the exception of her son, for whom and for whose family she had made other provisions.

ON *certiorari* to review the decision of the Court of Appeals, 24 N.C. App. 23, 209 S.E. 2d 876 (1974), which affirmed a judgment for defendants entered by *Smith, J.*, at the March 25, 1974 Session of BUNCOMBE Superior Court. This case was docketed and argued as No. 102 at the Spring Term 1975.

This action was brought by plaintiffs under the Uniform Declaratory Judgment Act to have the will of Harriet M. Stokes construed. The pertinent provisions of the will are:

"I . . . devise . . . to my son, Samuel Stokes . . . land owned by me consisting of thirty-six and three-fourths (36-3/4) acres . . . to be his to use and enjoy during his lifetime, and if he shall die without heirs of his body, then it is my will and desire, and I hereby direct that at the death of my son, without heirs, if his wife, Emma Stokes, shall be living that she shall use and enjoy the said land during her widowhood, and at her death or remarriage, the same shall go to my heirs. The said land so devised to my said son and to his said wife in case my said son shall have no child or

---

White v. Alexander

---

children shall be chargeable with the reasonable expense for the support of my husband, Julius Stokes . . . . "

These facts are not in dispute: Harriet Stokes died on March 25, 1925 survived by her husband, Julius, who died on June 3, 1939; her son, Sam; and two daughters, Hattie and Cora. Sam Stokes died intestate March 24, 1970, without children being born to or adopted by him, survived by his widow, Emma, who died intestate August 22, 1971, survived by her nephew. Hattie Stokes White died testate December 15, 1961, devising her estate to her three children. Cora Stokes Lynch died intestate May 26, 1971, survived by two children.

The plaintiffs Sam White and Mary White Ramsey are the surviving children of testatrix's daughter Hattie. The plaintiffs George Lynch and Lucille Lynch Thompson are the children of testatrix's daughter Cora. The defendant Iva White is the widow of Hattie's son, Everette, who died intestate in October, 1964, without children being born to or adopted by him. The defendant Billy Roy Alexander is the nephew and only heir of Sam Stokes' widow Emma.

The plaintiffs contend that they are each entitled to a one-fourth undivided interest in the land devised by the testatrix. Defendants, on the other hand, contend that undivided interests in this land ought to be allotted as follows: one-third to Billy Roy Alexander, one-ninth each to Iva White, Mary White Ramsey, and Sam White; and one-sixth each to George Lynch and Lucille Lynch Thompson. The trial judge adopted the defendants' view of the matter and the Court of Appeals affirmed.

*Adams, Hendon & Carson, P.A., by James Gary Rowe for plaintiff appellants.*

*Paul Young and Morris, Golding, Blue and Phillips, by James F. Blue III, for defendant appellee Billy Roy Alexander.*

EXUM, Justice.

The Court of Appeals erred insofar as it decided that the testatrix's son, Sam, was to share in the estate devised ultimately "to my heirs," a class which it properly held under this will should be fixed and identified at testatrix's death.

In construing this will we are well reminded that:

"The epigram of Sir William Jones over 250 years ago 'no will has a brother' has been often quoted by the courts.

(Citations omitted.) Two wills rarely use exactly the same language. Every will is so much a thing of itself, and generally so unlike other wills, that it must be construed by itself as containing its own law, and upon considerations pertaining to its own peculiar terms." *Gatling v. Gatling,* 239 N.C. 215, 221, 79 S.E. 2d 466, 471 (1954).

Our purpose here is to determine the testatrix's intent "from a consideration of the will itself and the circumstances confronting [her]. To ascertain such intent, 'we must consider the instrument as a whole and give effect to such intent unless it is contrary to some rule of law or at variance with public policy.' *Trust Co. v. Taliaferro,* 246 N.C. 121, 127, 97 S.E. 2d 776, 780 [1957]." *Trust Co. v. Bass,* 265 N.C. 218, 143 S.E. 2d 689 (1965).

**[1, 6]**   We hold that this will, properly construed, created estates in the subject property as follows: first, a life estate in testatrix's son, Sam. Testatrix clearly used the words "heirs of his [Sam's] body" to mean Sam's children. She later provided, "The said land so devised to my said son and to his said wife in case my said son shall have no *child or children* . . . . " (Emphasis added.) Without question "heirs of his [Sam's] body" meant, in testatrix's mind, Sam's children, if any. The Rule in Shelley's Case, the doctrine of merger, and General Statute 41-1 do not operate to give Sam a fee simple, defeasible or absolute. *McRorie v. Creswell,* 273 N.C. 615, 618, 160 S.E. 2d 681, 683 (1968). Next Sam's widow, Emma, got a contingent life estate. Finally we hold the language "and at her [Sam's widow's] death or remarriage, the same shall go to my heirs" created a remainder in the heirs of the testatrix, except Sam, contingent upon Sam's death without having had a child. This contingent remainder, assignable and transmissible, *Jernigan v. Lee,* 279 N.C. 341, 182 S.E. 2d 351 (1971) ; *Seawell v. Cheshire,* 241 N.C. 629, 86 S.E. 2d 256 (1955), passed in interest at testatrix's death to her two daughters and only heirs other than Sam in equal shares. At the death of each daughter that daughter's respective interest passed to her children. Thus Sam White, Mary White Ramsey, and Everette's widow, Iva, are each entitled to a one-sixth undivided interest; and George Lynch and Lucille Lynch Thompson are each entitled to a one-fourth undivided interest in the property.

**[2]**   The general, long established rule of testamentary construction is that a class of persons described as testator's heirs

who are given an estate in remainder are those persons who in fact and in law constitute the heirs of the testator at testator's death. The class is fixed and determined at that time. *Whitty v. Whitty,* 184 N.C. 375, 114 S.E. 482 (1922). "It is undoubtedly the general rule that when a testator, after a prior limitation of his property by will, makes in present terms, a disposition of the same in remainder to his own heirs or right heirs, these heirs, nothing else appearing, are to be ascertained and determined on as of the time of his death. This is not only the primary meaning of the word heirs, but the position is said to be favored by the courts because in its tendency it hastens the time when the ulterior limitation takes on a transmissible quality." *Jenkins v. Lambeth,* 172 N.C. 466, 468, 90 S.E. 513, 514 (1916).

This rule of construction is to be followed "in the absence of a contrary intention clearly expressed in the will, or to be derived from its context, read in the light of the surrounding circumstances." *Whitty v. Whitty, supra* at 378, 114 S.E. at 484. A different result follows where "the testator, in making an ulterior disposition of property after a particular life estate, uses such expressions as 'to such of my sons as may be living at their mother's death,' or 'surviving at her death,' or 'to the representatives of such as may have died before her death,' showing clearly that not only the enjoyment of the remainder, but also the right to take it was intended to be postponed until after the expiration of the preceding life estate." *Witty v. Witty, supra* at 381, 114 S.E. at 486. For applications of a survivorship condition see *Kale v. Forrest,* 278 N.C. 1, 178 S.E. 2d 622 (1971) ("my surviving heirs") and *Trust Co. v. Waddell,* 234 N.C. 34, 65 S.E. 2d 317 (1951) ("bodily heirs . . . then surviving.")

Here, however, as in *Witty,* we have no such expression in the instrument. The remainder after the life estates is simply to "go to my heirs." This means "a division among those who were the heirs of the [testatrix] at [her] death, and who took in right at that time . . . . " *Witty v. Witty, supra* at 381-82, 114 S.E. at 486.

[3] That the remainder to the testatrix's heirs is contingent upon Sam's death without having had a child does not, as plaintiffs contend, relying on General Statute 41-4, require that testatrix's heirs be determined as those persons who would have

fitted this description had testatrix died immediately after Sam. The statute, enacted in 1827, provides:

> "Every contingent limitation in any deed or will, made to depend upon the dying of any person without heir or heirs of the body, or without issue or issues of the body, or without children, or offspring, or descendant, or other relative, *shall be held and interpreted a limitation to take effect when such person dies not having* such heir, or issue, or *child,* or offspring, or descendant, or other relative (as the case may be) *living at the time of his death, or born to him within ten lunar months thereafter,* unless the intention of such limitation be otherwise, and expressly and plainly declared in the face of the deed or will creating it . . . . " (Emphases added.)

At common law and before the enactment of this statute gifts over upon the condition of someone's dying without issue or without heirs were void for remoteness. *Weeks v. Weeks,* 40 N.C. 111 (1847). It was thought that the condition of the gift over meant the failure of issue at some indefinite time, whenever it might happen. *Brown v. Brown,* 25 N.C. 134 (1842). (This rule was said by Taylor, C.J., in *Davidson v. Davidson,* 8 N.C. 163 (1820), to be "highly technical and refined" but to have been derived from the English statute *de donis* and firmly fixed in the law of property.) In order to save such gifts and comply, insofar as possible, with the obvious intent of the testator, our Court, before the enactment of General Statue 41-4, construed the contingency to mean dying during the life of the testator or some subsequent period provided for in the will such as a life estate, some period prescribed for division, arrival at full age, or some similar period. If death without issue or heirs occurred during either of these periods, the gift over was sustained; otherwise it was void. *Patterson v. McCormick,* 177 N.C. 448, 99 S.E. 401 (1919). For an early application of this rule of construction see *Hilliard v. Kearney,* 45 N.C. 221 (1853) construing a will written in 1775.

[4, 5]  The purpose of the statute was and is to save gifts over upon the contingency of someone's dying without issue even if the contingency occurs after the death of the testator or after some estate or period subsequent to his death. The words in the statute that the gift over "shall be . . . a limitation to take effect when such person dies not having such heir or issue, or

child . . . living at the time of his death, or born to him within ten lunar months thereafter" mean simply that the interest will be sustained and will pass in possession when and if the contingency, i.e., dying without issue, occurs, even if this event takes place after the death of the testator or grantor or after some intervening estate or period following his death. *Patterson v. McCormick, supra* at 452, 99 S.E. at 402; *Sain v. Baker,* 128 N.C. 256, 38 S.E. 858 (1901). These words do not mean that a determination of those persons who take the interest must necessarily wait until the event occurs. At what point in time those persons are determined remains a question of the testator's intent.

We are advertent to language in some of our cases that because of G.S. 41-4: "To determine the effectiveness of the limitation over the roll must be called as of the death of the first taker," *Turpin v. Jarrett,* 226 N.C. 135, 136, 37 S.E. 2d 124, 126 (1946), and "it cannot be determined who will take under the limitation until the death of [the first taker] . . . . " *Rees v. Williams,* 164 N.C. 128, 132, 80 S.E. 247, 249 (1913). In neither *Turpin* nor numerous cases cited therein to support the quoted statement, including *Rees,* was the question who among a class of ultimate takers had an interest or when the members of such a class should be determined. In both *Turpin* and *Rees* the sense of the expressions quoted was that until the death of the first taker with or without issue it could not be determined which among several possible classes of ultimate takers, rather than who among the same class, would have an interest. To the same effect see *Ziegler v. Love,* 185 N.C. 40, 115 S.E. 887 (1923). For clear holdings that membership of a class of remaindermen described simply as testator's heirs, or the like, which takes upon the contingency of death without issue, is determined at testator's death see *Sanderlin v. Deford,* 47 N.C. 74 (1854) ; *Weeks v. Weeks, supra; Jones v. Oliver,* 38 N.C. 369 (1844).

[6]    Testatrix did not, however, intend for her son Sam to be included among the class of remaindermen she described as "my heirs." She clearly limits his interest to a life estate. She intended his child or children, had there been any, to have had the fee by clear implication. *McRorie v. Creswell, supra; Finch v. Honeycutt,* 246 N.C. 91, 97 S.E. 2d 478 (1957). Sam's child, had one been born, would have taken a vested remainder in fee subject to open to let in other children as they might have

been born. *Blanchard v. Ward,* 244 N.C. 142, 92 S.E. 2d 776 (1956). Only if Sam died without having had a child would Sam's widow get a life estate, and "my heirs" take the remainder. When testatrix envisioned that event, as she must have done, her thoughts naturally would have turned to her two daughters, her only other heirs expectant, and their progeny. They, consequently, are the persons she intended to benefit by the ultimate estate in remainder. Sam who, when and if the remainder took effect in possession, would be dead without having had a child and whose widow would have had a life estate, was clearly not in testatrix's contemplation when she used the expression "to my heirs."

This result finds support in *Trust Co. v. Bass, supra,* and *Van Winkle v. Berger,* 228 N.C. 473, 46 S.E. 2d 305 (1948). *Trust Co.* while multifaceted and different in many respects from this rather simple case factually, dealt with a testamentary trust from which testator's only son was to receive the income for life and such of the principal as the trustee in its discretion saw fit to invade for his benefit. At son's death the principal, if any, was to be paid over to testator's "next of kin." Similar provisions were made for a supposed "granddaughter" (actually a foster child of testator's son) except when she reached 25 years of age she was to take the corpus of her trust which she did. This Court held first, that in accordance with a rule of construction "grown reverend by age" the words "next of kin" meant testator's nearest of kin and not his heirs. Testator died survived by his son, his only authentic lineal descendant, the foster granddaughter and collateral relatives. The Court held next that testator, having made detailed and adequate provisions for both his son and the foster granddaughter, did not intend either of them to be included in the class, "my next of kin."

It is true that in *Trust Co.* the Court also held in determining which of testator's collateral relatives would take the corpus, that the class, "my next of kin," should be determined as if testator had died immediately after his son. This construction was based primarily on the circumstance that his son would have been the *sole* member of the class so described had it been determined at testator's death. The Court said:

"In form and phraseology the devise under consideration here is indistinguishable from that in *Witty v. Witty, supra,* and, but for the fact that the life tenant here was the sole

representative of the class, testator's next of kin, this case would in fact be indistinguishable from *Witty v. Witty, supra.* This fact, however, makes the difference . . . . " *Trust Co. v. Bass, supra* at 242, 143 S.E. 2d at 706.

For a similar result see *Grantham v. Jinnette,* 177 N.C. 229, 98 S.E. 724 (1919). In the case now before us there are others besides Sam who at testatrix's death fit the description "my heirs." It is indeed, as we have said, these very others and their progeny whom, it seems clear, testatrix had in mind when she used the words, "my heirs."

In *Van Winkle v. Berger, supra,* a testamentary trust was established from which testator's three daughters were to receive income for life. Each daughter was also allotted a share of the testator's residuary estate. The testamentary trust also provided that if any daughter should die leaving no issue her one-third share of the principal should go into the residuary estate to be distributed according to provisions dealing with it. One of testator's daughters, Ella, died without issue but testate and bequeathed all of her property to one Diehle. The Court held that testator did not intend for Ella to share in one-third of the corpus of the testamentary trust from which she derived a life income and which passed to the residuary estate upon Ella's death without issue; consequently Diehle was not entitled to it. The Court said, "That Ella . . . could take an interest in the will virtually created by the contingency of her own death, involves a formidable legal paradox which appellants seem to circle but not surmount." 228 N.C. at 478, 46 S.E. 2d at 308.

Other jurisdictions have likewise excluded the holder of a preceding estate who was one of testator's heirs from a class described as "heirs" or the like of the testator to whom a remainder or executory interest was given. L. Simes and A. Smith, The Law of Future Interests § 735 (2d ed. 1956) ; Annot. 30 A.L.R. 2d 393, 436-441 (1953).

The Court of Appeals relied on *Baugham v. Trust Co.,* 181 N.C. 406, 107 S.E. 431 (1921), for the proposition that heirs means the testatrix's legal heirs at her death including her son Sam in which case both defendants would take an interest. Plaintiffs rely on *Burden v. Lipsitz,* 166 N.C. 523, 82 S.E. 863 (1914), distinguished by the Court of Appeals, for the proposition that testatrix's heirs ought to be determined as if she died immediately after her son Sam in which case both defendants

would be excluded and testatrix's four grandchildren would each take a one-fourth undivided interest. This is the construction some courts have utilized, but which we reject here, to avoid including the holder of a precedent estate among a class of remaindermen or executory devisees described as testator's heirs, or the like, when it was apparently the testator's intent not to include him and when he would have been included had the class been determined in its true legal sense as being those who take, as in intestacy, upon testator's death. Annots., 30 A.L.R. 2d 393, *supra;* 169 A.L.R. 207 (1947) ; 127 A.L.R. 602 (1940) ; 49 A.L.R. 174 (1927) ; L. Simes and A. Smith, The Law of Future Interests § 735, n. 19 (2d ed. 1956).

Both *Baugham* and *Burden* differ in material ways from this case. In *Baugham,* in the words of the Court, testator devised lands "to all his children, with provision that if one or more die without issue the interests of such children so dying shall vest in the survivors, and if all the children die without issue *then to the heirs of the testator.*" At his death testator was survived by his widow, three daughters and two sons, all of whom joined in a partition proceeding. One of the sons, Seth, acquired a lot in this proceeding which he apparently thereafter wanted to sell or mortgage. The question was whether Seth owned an indefeasible or defeasible fee. The Court applied the general rule that "the death of testator is the time at which members of a class are to be ascertained in case of a gift to the testator's heirs, next of kin, or other relatives . . . . " and held that since testator's heirs had all joined in the partition proceeding by which Seth acquired his lot, he held an indefeasible fee. In *Baugham,* all testator's children were given by will the same interests. No question arose, nor could it have, regarding whether one or less than all the children should be excluded from the class to which the remainder was given. Either all of them should have been excluded or none. The Court decided to exclude none.

In *Burden,* on the other hand, there was a devise to a son, John, in fee simple "provided he has a child or children; but if he has no child, then I give him the said land during his life, and to his widow if he leaves one surviving, during her widowhood, and then the said land shall go in equal portions to my heirs at law . . . . " Testator died survived by six daughters, a granddaughter (child of a daughter who predeceased him) and John. These daughters, their spouses, and the granddaughter

conveyed their interests to John. John, a widower with no child ever having been born to him, contracted to convey the lands devised. This Court held that since those persons who were to take the executory devise upon John's death without having had a child could not be determined until John's death, John held only a defeasible fee. *Burden*, as the Court of Appeals noted, is distinguishable in that John initially obtained a defeasible fee rather than a life estate. It is pointed out in L. Simes and A. Smith, The Law of Future Interests § 735 (2d ed. 1956) that:

> "If the preceding estate is for life, and if the holder of that estate is not the sole heir, it is still possible to apply the usual rule of determining heirs at the testator's death and yet imply an exception to the class of heirs [as to the life tenant] . . . .

> "When the preceding estate is a defeasible fee, and the gift to the heirs is in the form of an executory interest, it is much easier to decide that the holder of the preceding estate is not to participate in the executory interest . . . . Accordingly, most courts are willing here [when the preceding holder is the sole heir] to determine the heirs as of the expiration of the prior interest. The same result probably follows even when [the preceding holder] is not the sole heir at testator's death, but is merely one of the class."

Even so we question as did the Court in *Baugham* the soundness of the result in *Burden*. A different result upon like facts might follow today.

[6] We hold, then, that when testatrix devised the contingent remainder "to my heirs" she intended to refer to all who at her death would be her legal heirs in the technical sense with the exception of her son, Sam, for whom and for whose family she had made other provisions. Thus when she died the contingent remainder passed in equal shares to her two daughters, Hattie and Cora. At Hattie White's death her one-half interest was devised to her three children, Sam, Mary and Everette. Everette's share at his death was inherited by his widow, Iva White. Thus the plaintiffs, Samuel White and Mary White Ramsey, and the defendant Iva White are each entitled to a one-sixth undivided interest in the land. Cora Lynch's one-half interest was inherited at her death by her two children, George Lynch and Lucille Lynch Thompson, the other plaintiffs herein, who are each

entitled to a one-fourth undivided interest in the land. The other defendant, Billy Roy Alexander, the only heir of Sam Stokes' widow, Emma, is not entitled to any interest in the land.

The Court of Appeals erred in holding that Billy Roy Alexander was entitled to an interest and in determining the quantities of undivided interests to which the other parties were entitled. The case is, therefore, remanded to the Court of Appeals to the end that it be remanded to the Superior Court for entry of judgment in conformity with our opinion.

After the preparation of this opinion and before it was filed the plaintiffs Ramsey, Lynch, and Thompson moved to substitute one Freda White for Samuel White, one of the plaintiffs, suggesting to the Court in their motion the death of Samuel White on August 23, 1975, a resident of Medina County, Ohio. The motion further alleged that Freda White is the surviving widow of Samuel White and that by will, a certified copy of which was attached to the motion, filed in the Probate Division of the Court of Common Pleas of Medina County, Ohio, Samuel White named Freda White his executrix and devised to her all of his real estate thereby making her his personal representative and successor in interest of his real estate. By order of the Court on May 3, 1976, Freda White was permitted to join in this action as a party-plaintiff for the purpose of asserting in the Superior Court such interest as she may have. Upon remand to it the Superior Court shall make due inquiry into the claim of Freda White. If it finds that she is in fact and in law the successor in interest of Samuel White it shall in its judgment allot to her all right, title and interest in the real property in question to which by virtue of this opinion Samuel White would otherwise have been entitled.

Error and remanded.