LOIS RAWLS, ELLA V. JOYNER, GEORGE N. VAUGHAN, FANNIE LEE HAS-
SETT, BLANCHE V. WHITEHEAD, J. T. VAUGHAN AND CHARLES N.
VAUGHAN v. ALMA RUTH V. RIDEOUT, J. GUY REVELLE, JR., EX-
ECUTOR OF THE ESTATE OF JESSIE MAE V. HARRISON, ROBERT A.
PARKER AND MARGARET LEE PARKER

No. 846SC295

(Filed 7 May 1985)

### 1. Wills § 43— heirs and relatives distinguished

The court will construe the words "heirs" and "relatives" in a will in the
technical sense, absent evidence of the testatrix's contrary intent. "Heirs" are
people entitled to take under the Intestate Succession Act, while "relatives"
means either all those persons related by consanguinity or the class of
relatives entitled to take under the intestacy statutes, excluding the husband
or wife. G.S. 29-2(4) (1984).

### 2. Wills § 43— devise to nearest (relatives) heirs—construed as nearest heirs with husband excluded

The phrase ". . . nearest (relatives) heirs" in a will left a remainder in-
terest to the testatrix's heirs with her life tenant husband excluded. "Nearest
heirs" is the controlling phrase because "relatives" is minimized by its
enclosure in parentheses; however, "relatives" does exclude her husband
because it refers either to those persons related by consanguinity or to those
entitled to take under the Intestate Succession Act, excluding the husband or
wife. G.S. 41-6.1 (1984), G.S. 29-2 and -14 (1984), G.S. 29-15(4) and -16 (1984).

### 3. Wills § 44— per stirpes distribution erroneous

A remainder interest in a testatrix's estate was to be distributed to the
estates of her sisters and brother or to her nieces or nephews where the will
left a lifetime interest to her husband and the remainder to ". . . my nearest
(relatives) heirs." The estate of the one sister living at the time of the
testatrix's death receives one-third of the remainder interest. Each child of the
other sister and brother who were alive at the time of the testatrix's death, or
their estates, would receive one-eighth of the two-thirds remainder, or a one-
twelfth interest. G.S. 29-15(4) and -16(b) (1984).

APPEAL by plaintiffs from *Brown, Judge.* Order entered 20
December 1983 in Superior Court, HERTFORD County. Heard in
the Court of Appeals 27 November 1984.

*Perry W. Martin and Donnie R. Taylor for plaintiff ap-
pellants.*

*Revelle, Burleson, Lee & Revelle, by L. Frank Burleson, Jr.,
for defendant appellee J. Guy Revelle, Jr., Executor of the Estate
of Jessie Mae V. Harrison.*

*Cherry, Cherry, Flythe and Overton, by Thomas L. Cherry, Larry S. Overton and Ernest Rawls Carter, Jr., for defendant appellees Alma Ruth Rideout, Robert A. Parker, and Margaret Lee Parker.*

BECTON, Judge.

This declaratory judgment action involves the construction of the phrase "to my nearest (relatives) heirs" in the remainder clause of a devise, a determination of the class closing date, and a distribution of the shares under the Intestate Succession Act scheme. The parties are the nieces, nephews, and grandnephews of the testatrix.

On 1 July 1982 the plaintiffs, the five remaining children and the two grandchildren of Brownie Irene Vaughan Liverman's only brother, Roy Vaughan (deceased 1958), petitioned the trial court to construe the provisions of Mrs. Liverman's will. The defendants in this declaratory judgment action are the children of Mrs. Liverman's two sisters, Sally Vaughan Parker (deceased 1949) and Hattie Bell Vaughan (deceased 1965). Mrs. Liverman died testate on 22 May 1962. She had executed her will on 25 November 1939. Apparently, she and her husband, Therrell Liverman, had no children. Under the terms of her will, her husband, Therrell Liverman, received a life estate in the "house and tract of land" on which Mrs. Liverman had lived and in all the "household and kitchen furniture" she owned. Therrell Liverman died on 10 September 1980. The contested remainder interest in the second clause of the will is underlined below:

> Second, I give and devise to my beloved husband, Therrell Liverman, the house and tract of land on which I now reside, and all household and kitchen furniture which I now own are [sic] may own at the time of my death, for his natural life <u>and then said property shall pass to my nearest (relatives) heirs.</u>

After a bench trial, the trial court concluded that the plaintiffs and the defendants, Mrs. Liverman's nieces, nephews and two grandnephews, were "the owners of the house and tract of land . . . *per stirpes*, and the proceeds derived from the sale of said land should be divided *per stirpes*." The parties had agreed

to sell the devised property and to hold the proceeds in trust awaiting the court-ordered disposition.

The plaintiffs appeal from the *per stirpes* distribution. We vacate and remand.

I

In construing the provisions of a will, the court is guided by the intent of the testatrix, as expressed in her will. *Wachovia Bank & Trust Co. v. Livengood*, 306 N.C. 550, 294 S.E. 2d 319 (1982). Ordinary words are to be given their ordinary meaning and technical words are presumed to have been used in a technical sense. *Clark v. Connor*, 253 N.C. 515, 117 S.E. 2d 465 (1960).

[1] The word "heirs" has a long-established technical meaning. " 'An heir, therefore, is he upon whom the law of inheritance casts the estate immediately on the death of the ancestor.' " 4 W. Bowe & D. Parker, *Page on the Law of Wills* Sec. 34.4, at 407 (rev. ed. 1961) (quoting 1 W. Blackstone, Commentaries *201). In other words, "heirs" were generally the persons entitled to take under the intestacy laws. Since the repeal of the former intestacy laws, the Rules of Descent, N.C. Gen. Stat. Chap. 29 (1950), and the statute of Distribution, N.C. Gen. Stat. Sec. 28-149 (1950), and the enactment of the Intestate Succession Act (the Act), as codified at N.C. Gen. Stat. Chap. 29 (1984), an "heir" is technically defined as "any person entitled to take real or personal property upon intestacy" under the Act. G.S. Sec. 29-2(4) (1984); 1 N. Wiggins, *Wills and Administration of Estates in North Carolina* Sec. 134, at 241 (2d ed. 1983); *see* 4 Bowe & Parker, *supra*, at 409. The Act became effective 1 July 1960 and applies to estates of persons dying on or after that date. 1959 N.C. Sess. Laws Ch. 879 Sec. 15. Thus, absent words expressing the testatrix' contrary intent, the court will construe the word "heirs" in a will in the technical sense. 1 Wiggins, *supra; Stephens v. Clark*, 211 N.C. 84, 189 S.E. 191 (1937) (decided under repealed statutes); 3 Restatement of the Law of Property Sec. 305 (1940).

"Relatives," when used in a will, has two alternative technical meanings, absent evidence of the testatrix' intent to have the popular meaning govern. Annot., 5 A.L.R. 3d 715 (1966). "Relatives," in the popular sense, refers to all those persons related by consanguinity *or* affinity. 4 Bowe & Parker, *supra*, Sec.

34.25. When used in a will, "relatives" generally means either all those persons related by consanguinity or, more frequently, the narrower class of relatives entitled to take as heirs under the intestacy statutes, excluding the husband or wife. 1 Wiggins, *supra*, Sec. 134; 4 Bowe & Parker, *supra*, Sec. 34.25; Annot., 5 A.L.R. 3d 715 (1966).

[2] In the case *sub judice*, the word "nearest" precedes both "relatives" and "heirs" in the remainder clause. We must decide whether the presence of "nearest" reveals the testatrix' intent to circumvent the technical meanings of "relatives" and "heirs." We conclude that it does not.

From the common law it is clear that the phrase "nearest heirs" is itself a technical phrase synonymous with "heirs." *Ratley v. Oliver*, 229 N.C. 120, 47 S.E. 2d 703 (1948). The *Ratley* Court restated the long-standing principle that "the words 'nearest heirs,' standing alone, should be understood in their technical sense as denoting an indefinite succession of lineal descendants who are to take by inheritance. . . ." 229 N.C. at 121, 47 S.E. 2d at 704. *See also Cox v. Heath*, 198 N.C. 503, 152 S.E. 388 (1930) ("those who are heirs are therefore necessarily nearest heirs").

In *Fields v. Rollins*, 186 N.C. 221 (1923), our Supreme Court held that "nearest relatives" is likewise a synonym for the technical phrase "next of kin." Under the common law, the phrase "next of kin" in a will has a narrower technical meaning than "heirs" or "nearest heirs." Instead, it signifies the extremely limited class of the nearest blood relations, thereby excluding those persons related by marriage and prohibiting the principle of representation, unless there is evidence in the will of the testatrix' intent to avoid the technical meaning. *In re Cobb*, 271 N.C. 307, 156 S.E. 2d 285 (1967); *Wallace v. Wallace*, 181 N.C. 158, 106 S.E. 501 (1921); 4 Bowe & Parker, *supra*, Sec. 34.25. In enacting N.C. Gen. Stat. Sec. 41-6.1 in 1967, the Legislature made "next of kin" synonymous with "heirs." G.S. Sec. 41-6.1 (1984) reads: "A limitation by deed, will, or other writing, to the 'next of kin' of any person shall be construed to be to those persons who would take under the law of intestate succession. . . ." (Effective 27 June 1967.) We note, though, that a will takes effect and speaks as of the testatrix' death. *Wachovia Bank & Trust Co. v. McKee*, 260 N.C. 416, 132 S.E. 2d 762 (1963). Mrs. Liverman died 22 May

1962. Therefore, at the time of her death, "next of kin" and, by implication, "nearest relatives," still retained their very narrow technical common-law meaning.

From the above analysis, we conclude that the word "nearest" in the remainder clause at hand is only an additional element of technical language, rather than a signal of Mrs. Liverman's contrary intent. Having explored the varying technical meanings of "nearest heirs" and "nearest relatives" in effect at the time Mrs. Liverman's will took effect, we must next determine which phrase controls.

In Mrs. Liverman's will, "relatives" appears in parentheses between "nearest" and "heirs." This Court has the discretion to transpose words, phrases or clauses and to supply or disregard punctuation to effectuate the intent of the testatrix. *Entwistle v. Covington*, 250 N.C. 315, 108 S.E. 2d 603 (1959); *Mewborn v. Mewborn*, 239 N.C. 284, 79 S.E. 2d 398 (1954) ("When the sense of the phrase or clause . . . manifestly requires it"). According to commonly-accepted rules of punctuation, parentheses are used to set off supplementary or illustrative material; they "tend to minimize the importance of the elements they enclose." J. Hodges & M. Whitten, *Harbrace College Handbook* 162 (7th ed. 1977). Thus, the word "relatives" is minimized by its enclosure in parentheses. We therefore are persuaded that "nearest heirs" is the controlling phrase. For greater clarity, we transpose "(relatives)" and "heirs." "([R]elatives)" modifies "nearest heirs"; the segment should read "nearest heirs (relatives)." Moreover, the words are to be given their technical meanings.

We believe that our transposition of Mrs. Liverman's words effectuates her intent to leave a remainder interest to her heirs, while excluding her life-tenant husband, Therrell, a non-relative, from the class of remaindermen, for the reasons discussed in II, *infra*.

## II

Our courts have long since adopted the general rule of testamentary construction that a remainder interest to a class described as the testatrix' "heirs," "next of kin," or other relatives vests immediately upon the testatrix' death and the class is to be fixed and determined at that time. *White v. Alexander*, 290 N.C.

75, 224 S.E. 2d 617 (1976); *Central Carolina Bank & Trust Co. v. Bass*, 265 N.C. 218, 143 S.E. 2d 689 (1965); *Witty v. Witty*, 184 N.C. 375, 114 S.E. 482 (1922). However, the intent of the testatrix, as expressed in the will, remains the cardinal principle of will constructions. *Id.*

As discussed in I, the testatrix' "nearest heirs" consist of those persons entitled to take upon her intestacy. In construing a will with a remainder interest to a class of the testatrix' "heirs," our courts look to the intestacy laws in effect at the testatrix' death to determine who the "heirs" are and, equally important, the shares they are entitled to take, unless the language of the will reveals a contrary intent. *Stephens v. Clark*, 211 N.C. 84, 189 S.E. 191 (1937); *Freeman v. Knight*, 37 N.C. (2 Ired. Eq.) 72 (1841) (both decided under earlier statutes); 1 Wiggins, *supra*, Sec. 134; *Wachovia Bank & Trust Co. v. McKee; see also* L. Simes & A. Smith, *The Law of Future Interests* Sec. 747 (2d ed. 1956); Restatement, *supra*, Secs. 305 and 310; *In re Koch*, 282 N.Y. 462, 27 N.E. 2d 10 (1940); 80 Am. Jur. 2d *Wills* Sec. 1422 (1975). At the time of Mrs. Liverman's death, the Intestate Succession Act had already become effective.

Under the Act, the "surviving spouse" is an "heir," and if the couple was childless, the "surviving spouse" is the sole "heir," taking all the real and personal property. G.S. Secs. 29-2 and -14 (1984). Thus, at the time of Mrs. Liverman's death, her husband, Therrell, was her sole "heir." Applying the general rule of testamentary construction, Mr. Liverman apparently receives both the life estate and the remainder. In *Central Carolina Bank & Trust Co. v. Bass*, the court reviewed the various approaches taken by other jurisdictions when faced with a life tenant being the sole remainderman at the death of the testatrix:

> 1) the will created a vested remainder subject to the life estate, but excluding the life tenant, . . . 2) the will created a vested remainder, the remaindermen being determined at the testat[rix]' death, with no exclusion of the life tenant, and the mere circumstance that the devisee of the precedent estate is the sole heir is not sufficient to show that the testat[rix] intended heirs or next of kin to be ascertained at any time other than [her] death, . . . 3) the will created a contingent

remainder in those who answered the roll call at the death of the life tenant. . . .

265 N.C. 218, 241, 143 S.E. 2d 689, 705 (citations omitted). *See also* Simes & Smith, *supra*, Sec. 735; Restatement, *supra*, Sec. 308 comment K; Annot., 30 A.L.R. 2d 393, 435-442 (1953).

The testator in *Bass* had set up a complex testamentary trust. The testator's son, an alcoholic, was to receive the income for life and whatever percentage of the principal the trustee in its discretion saw fit to invade. At the son's death, the principal was to be distributed to the testator's next of kin. The Court concluded that the testator, by providing so well for his son, did not intend to include him in the class of his next of kin. Moreover, since next of kin signifies nearest of kin, and the son was the testator's sole nearest of kin during his lifetime, the Court concluded that the class of next of kin, excluding the son, could only be ascertained as if the testator had died immediately after his son. Thus, the class closing was postponed until the life tenant's death.

Similarly, we conclude that the testatrix intended to exclude her husband from the class of her heirs. However, we do not base our decision on the adequacy of the life estate alone, but rather on the testatrix' express intent. The remainder was devised "to my nearest heirs (relatives)." As we noted earlier, in its technical sense, "relatives" either refers to those persons related by consanguinity or those persons entitled to take under the Intestate Succession Act, excluding the husband or wife. Mr. Liverman is not a "relative" in the technical sense. By modifying "nearest heirs" with "(relatives)," the testatrix intended to exclude her husband from taking as a remainderman.

We are not faced with a devise to the testatrix' next of kin as was the case in *Bass*. In *White v. Alexander*, Justice Exum construed the provisions of a will devising a life estate to the testatrix' son

and if he shall die without heirs of his body, then it is my will and devise, and I hereby direct that at the death of my son, without heirs, if his wife, Emma Stokes, shall be living that she shall use and enjoy the said land during her widowhood, and at her death or remarriage, the same shall go to my heirs.

290 N.C. at 76, 224 S.E. 2d at 618. The Court held that the son's interest was limited to a life estate; the testatrix impliedly intended her son's children to take a vested remainder. The testatrix' heirs received a contingent remainder. In distinguishing *Bass*, the *White* Court focused on the existence of other heirs besides the son at the testatrix' death, before concluding that the class of heirs taking the contingent remainder was to be ascertained at the testatrix' death. As in *White v. Alexander*, if we exclude Mr. Liverman from the class of "heirs," others step forward to qualify as heirs at Mrs. Liverman's death: her sister, Hattie Belle Vaughan and the lineal descendants of her deceased sister, Sally Vaughan Parker and her deceased brother, Roy Vaughan, as discussed in III, *infra*. G.S. Sec. 29-15(4) and -16 (1984). The class of the testatrix' heirs can be ascertained at her death. Thus, we need not take the *Bass* Court's approach and postpone the class closing until the life tenant's death.

Consequently, we hold that the testatrix intended to exclude her husband, Therrell, from the class of "heirs" taking a remainder interest, and further, we hold that the class was to be ascertained at the testatrix' death.

## III

[3]   When a gift is made to a class of "heirs," the intestacy laws govern not only the identification of the "heirs," but also the shares to which they are entitled. *Freeman v. Knight*; Simes & Smith, *supra*, Sec. 747; Restatement, *supra*, Sec. 310. The Act calls for a *per capita* distribution of the decedent's real and personal property to all surviving persons in the same degree of relationship to the decedent. McCall, *North Carolina's New Intestate Succession Act*, 39 N.C. L. Rev. 1, 12 (1960). The distribution scheme is commonly referred to as *"per capita* at each generation."

Once we exclude Mr. Liverman from the class of the testatrix' heirs, we are left to divide her property among her remaining potential heirs—her sisters and brother or, depending on the dates of her siblings' deaths, their lineal descendants. G.S. Sec. 29-15(4) and -16(b) (1984). Their respective interests vested at the time of her death, 22 May 1962. At that time, only one sister, Hattie Belle Vaughan (deceased 1965), was still alive. Under G.S. Sec. 29-16(b)(1) (1984), Hattie Belle's share is calculated by dividing

"the property by the number of surviving brothers and sisters plus the number of deceased brothers and sisters who have left lineal descendants surviving the [testatrix] within the fifth degree of kinship to the [testatrix]." Mrs. Liverman, the testatrix, had three siblings: Hattie Belle, Roy, and Sally. Roy and Sally each had children alive at the testatrix' death. Therefore, the estate of Hattie Belle Vaughan receives a one-third share. G.S. Sec. 29-15(4) and -16(b) (1984). There is no evidence as to whether Hattie Belle Vaughan died testate or intestate in 1965. Her daughter, Alma Ruth V. Rideout and the estate of her other daughter, Jessie Mae V. Harrison (deceased 1982), receive nothing directly under the terms of Mrs. Liverman's will. Their shares, if any, are dependent on their status as heirs or devisees of their mother.

The remaining two-thirds of Mrs. Liverman's property is to be distributed among the next generation—the testatrix' nieces and nephews, the lineal descendants of her deceased brother and sister, who were alive at the time of her death. G.S. Sec. 29-16 (b)(2) (1984). Again, each surviving niece's or nephew's share is calculated by dividing the property "by the number of such surviving nephews or nieces plus the number of deceased nephews and nieces who have left lineal descendants surviving the [testatrix] within the fifth degree of kinship to the [testatrix]." G.S. Sec. 29-16(b)(2) (1984). At the time of the testatrix' death all eight nieces and nephews by her deceased brother and sister were alive: Robert A. Parker, Margaret L. Parker, Ella V. Joyner, George N. Vaughan, Fannie Lee Hassett, Blanche V. Whitehead, and Nellie B. Vaughan (deceased between 1966 and 1980). Each niece or nephew or his or her estate, if since deceased, is entitled to one-eighth of the two-thirds remaining, a one-twelfth share. Again, the record does not reflect whether Nellie B. Vaughan died testate or intestate. As with Hattie Belle's children, Nellie B. Vaughan's two children, the testatrix' grandnephews, J. T. Vaughan and Charles N. Vaughan, do not take a share directly under Mrs. Liverman's will. They can only share as heirs or devisees of their mother.

The trial court erred in making a *per stirpes* distribution to all of Mrs. Liverman's nieces and nephews, as well as her two grandnephews. The order is vacated, and the case is remanded for the entry of an order consistent with this decision.

Vacated and remanded.

Judges ARNOLD and WELLS concur.